## JACK IN THE BOX, INC., Petitioner,

v.

## Wade SKILES, Respondent.

No. 05–0911.

Supreme Court of Texas.

Feb. 9, 2007.

Rehearing Denied June 8, 2007.

Jerry Fazio and Jason Eric Kipness, Owen & Fazio, P.C., Dallas, for Petitioner.

Art Brender and Jason C.N. Smith, Law Offices of Art Brender, Fort Worth, for Respondent.

PER CURIAM.

Wade Skiles injured his knees when he climbed up and jumped over a broken lift gate on the back of his employer's truck. He sued his employer, Jack in the Box, Inc., for negligence. Jack in the Box asserted, among other defenses, that it owed no duty to warn Skiles of obvious dangers and moved for summary judgment. The trial court granted the motion, but the judgment was reversed by the Fifth Court of Appeals, which remanded the case for

trial. We reverse and render a take-nothing judgment in favor of Jack in the Box.

Skiles was employed by Jack in the Box as a tractor-trailer driver for twenty-four years. His job duties included the transport and delivery of food product to various Jack in the Box restaurants. The company trailers are equipped with automatic lift gates that assist drivers in loading and unloading food product. The drivers are instructed that if they encounter any problems with the lift gate, they should call the company's independent service center and report the malfunction. A maintenance person is then sent to make repairs.

Skiles arrived for a delivery at a Jack in the Box restaurant in Seguin, Texas and attempted to lower the lift gate, but the gate would not operate. Skiles told the restaurant manager about the problem, but the manager responded that the restaurant was out of hamburger meat and it was the "lunch rush." Skiles reported the problem to a supervisor at the Jack in the Box distribution center. He told the supervisor he was going to use a ladder to climb over the non-functioning lift gate so he could get to the food supplies needed by the restaurant. According to Skiles, the supervisor's response was, "Good." The supervisor did not have a clear recollection of his conversation with Skiles. He first testified he did not recall what he said to Skiles, but later said he "would have" told Skiles to call the service center. At any rate, following this conversation, Skiles obtained the ladder from the restaurant and used it to climb over the lift gate and jump into the back of the trailer. Skiles said that when he landed on the floor of the trailer, both of his knees "popped" and were injured. Skiles did not call the service center until after his injury. Upon completing his other scheduled deliveries, Skiles returned to the company distribution center and filed an employee injury claim form.

Because Jack in the Box is not a workers' compensation subscriber, Skiles brought a negligence action against the company. Jack in the Box moved for summary judgment under Texas Rule of Civil Procedure 166a(c) and 166a(i), which the trial court granted without stating the grounds for its decision. Skiles appealed the judgment to the Fifth Court of Appeals, attacking the trial court's implied findings that: (1) there was no evidence Jack in the Box breached any duty owed to Skiles; (2) there was no evidence Jack in the Box's negligence proximately caused Skiles's injury; and (3) Skiles's negligence was the sole proximate cause of his injury. The court of appeals decided all three issues in Skiles's favor, reversed the judgment, and remanded the case to the trial court.

■ In this Court, Jack in the Box argues there is no evidence it owed and breached a duty to warn Skiles of an obviously dangerous condition. We agree and, because our holding on that issue is dispositive of the case, do not address the other issues.[1]

---

1. Jack in the Box argues the court of appeals: (1) wrongly concluded Skiles raised a fact issue in his summary judgment affidavit; (2) erroneously determined Jack in the Box breached a duty to provide safe instrumentalities to Skiles; (3) incorrectly concluded there is evidence Jack in the Box owed and breached a duty to warn Skiles of a dangerous condition; (4) erroneously reversed the trial court's dismissal of Skiles's motion for summary judgment on the issue of no evidence of proximate cause; and (5) erred when it reversed the trial court's judgment that Skiles was, as a matter of law, the sole proximate cause of the accident. We do not address whether the court of appeals committed error when it held Jack in the Box breached its duty to provide safe instrumentalities to Skiles be-

██ The court of appeals looked to its own precedent in *Patino v. Complete Tire, Inc.*, 158 S.W.3d 655 (Tex.App.-Dallas 2005, pet. denied), in which it held an employer's duty to warn an employee of a danger arises when: (1) the employment is dangerous or complex; and (2) the employer is aware of the danger and has reason to know the employee is not. 170 S.W.3d 173, 179 (Tex.App.-Dallas 2005, pet. granted). *Patino* involved a tire repair employee who sued his employer after he suffered a blow to the head while removing a large tire from a rim. *Patino*, 158 S.W.3d at 658. The court of appeals relied on *Patino* to conclude there is evidence Jack in the Box owed and breached a duty to warn Skiles of the dangers of using a ladder to climb over a lift gate. 170 S.W.3d at 181. Jack in the Box argues, in part, that the court of appeals misapplied *Patino*. But *Patino* does not control this case; our recent holding in *Kroger Co. v. Elwood* does. 197 S.W.3d 793 (Tex.2006).

In *Elwood*, a grocery store employee brought a negligence action against his employer after he was injured when a customer slammed her car door on his hand as he was transferring items from a grocery cart to her vehicle. *Id.* at 794. The employee argued that Kroger had a duty to warn him not to place his hand on a car's door jamb while putting groceries in the car. *Id.* We held that, while the duty of ordinary care generally requires an employer to "warn an employee of the hazards of employment and provide needed safety or equipment or assistance," the employer "owes no duty to warn of hazards that are commonly known or already appreciated by the employee." *Id.* In this case, as the court of appeals concluded, any dangers associated with using a ladder

to jump over a lift gate were obvious to Skiles. 170 S.W.3d at 181.

Skiles argues, however, that an employer has a duty to warn employees of dangerous activities that are not normally a part of their duties, and that having to use a ladder to climb over a lift gate was both dangerous and not normally part of his duties. *See Kroger Co. v. Keng*, 976 S.W.2d 882, 887 (Tex.App.-Tyler 1998), *aff'd*, 23 S.W.3d 347 (Tex.2000). In *Keng*, a grocery store employee was injured when, at the direction of an assistant manager, she climbed on a ladder to remove boxes from the upper shelves of a deli freezer. *Id.* at 885. The employee complained to no avail that moving the boxes was not part of her normal duties. *Id.* When the employee began down the ladder, three of the boxes fell from the top shelf and injured her. *Id.* The court of appeals held that "[t]he jury could have found negligence in [the assistant manager's] order ... knowing that Keng was untrained in that area." *Id.* at 886. We granted Kroger's appeal only "to resolve a conflict among the courts of appeals concerning the propriety of submitting a comparative-responsibility question to the jury." *Kroger Co. v. Keng*, 23 S.W.3d 347, 348 (Tex.2000). And after concluding there was no error in the comparative-responsibility submission, we affirmed the court of appeals' judgment. *Id.* at 353.

But *Keng* differs substantially from this case. In *Keng*, the employee was ordered by her supervisor to move boxes out of a freezer despite the fact that her normal job duties were to wait on customers, make sandwiches, and sell pastries. *Keng*, 976 S.W.2d at 885. Prior to moving the boxes, the employee told her manager that doing so was not part of her job duties but

cause the court went on to conclude that the breach had no connection to Skiles's injury. Thus, any error on the part of the court of

appeals worked no harm against Jack in the Box.

was again ordered to move the boxes. *Id.* Thus, the experience of the employee in *Keng* differed from Skiles's experience in two important respects. First, unloading food product was a regular part of Skiles's job and he was trained on how to handle situations when the lift gate would not operate. Second, Skiles acknowledges he voluntarily made the decision to find a ladder, jump into the trailer, and unload the hamburger meat.

The dangers associated with the use of a ladder to climb over a lift gate are common and obvious to anyone. Following our holding in *Elwood,* which we issued after the court of appeals' opinion in this case, we conclude Jack in the Box owed no duty to warn Skiles of the danger posed by his intended use of the ladder. We reverse the court of appeals' judgment and render a take-nothing judgment in favor of Jack in the Box.