

# IN THE
# TENTH COURT OF APPEALS

## No. 10-07-00064-CV

**SSHG, LLC D/B/A SUPPORT SERVICES
HOLDINGS GROUP AND
LEGACY SUPPORT SERVICES, LTD.,**

                                                    **Appellants**

 **v.**

**ERIC IAN LEWIS,**

                                                    **Appellee**

---

**From the 19th District Court
McLennan County, Texas
Trial Court No. 2005-1421-1**

---

# MEMORANDUM OPINION

---

Eric Ian Lewis was injured on the job while using an electric hand planer and sued his employer, SSHG, LLC, (SSG) a worker's compensation nonsubscriber, for negligence. A jury found for Lewis, and SSG appeals the adverse judgment. We will affirm.

### Background and Evidence

Lewis worked as an assistant in the maintenance department of SSG, which runs

a technical support call center.  On the day in question, Paul Woods, who was Lewis's supervisor and SSG's Facilities Manager and had thirty-five years of experience in construction and the operation of power tools, was on a medical leave of absence. Lewis and a co-worker, Travis Allison, who was the "lead man" in the maintenance department, were assembling work station cubicles.  Both were in their early twenties. Lewis and Allison realized that they needed smaller strips of wood for a portion of the cubicle assembly, so Allison called Woods at home for guidance.  Woods testified that he initially said they could get new wood and cut it to the size needed, or they could plane the wood that they had, but it was for Allison to decide what to do.  He claimed, however, that he ended the telephone conversation with the instruction to just cut new wood.  Woods said that when he concluded by telling Allison to just cut new wood, his intent was that Allison and Lewis not use the planer because he thought that it was too dangerous for them to use it without Woods's having shown them how to use it correctly and safely.

Allison disagreed with Woods's version of how the conversation ended, testifying that Woods told him he could either cut new wood or plane down the wood they already had.  It was Allison's understanding that it was up to him to decide which way to do it.  Woods and Allison agreed that Woods did not specifically say, "Don't use the planer."

Allison then went to Lewis and told him to use the hand planer on the wood they had.  The electric hand planer was Woods's personal power tool that he had brought to SSG.  It was about forty years old and did not have instructions with it or

warnings on it. Lewis used the hand planer by grabbing it with his right hand, turning it upside down so that the spinning blade was exposed, and pressing the wood against it with his left hand to plane it. While using the planer this way, Lewis successfully planed most of the wood, but toward the end the planer cut off the tips of Lewis's left thumb and index finger. Lewis was not sure exactly how the accident happened.

Lewis had some prior carpentry experience; he had worked for about six months at a cabinet shop where he cut out and built cabinets using power tools and saws, and beginning around age fifteen or sixteen, he had occasionally assisted his stepfather, who did homebuilding, remodeling, and add-ons. His stepfather had carpentry tools at home and trained him how to use them correctly and safely. He also had worked for a restoration company as a carpenter's assistant, occasionally assisting the carpenters but mostly working on the cleanup crew. Allison's background was in heating and air conditioning.

Woods knew that Lewis had some carpentry experience, but he didn't know the details of it, as Lewis had not been hired with the idea of doing carpentry. Lewis had never used a hand planer before; he had only used a table-mounted planer that wood is fed into and comes out the other end, and hands are never near the blade. He had seen Woods use the hand planer once before on long pieces of part of a door frame, and he cannot recall if he also used it on that occasion. Allison said that he had previously seen Lewis using the hand planer on a door frame and that Lewis had said he had used a table-mounted planer. Lewis was generally familiar with the need to stabilize or brace wood while working on it, and he knew not to get his hand near the sharp moving

blades of tools like saws and lawnmowers. He also admitted that the planer appeared to require two hands; it had a knob and a grip with a trigger.

Neither Allison nor Lewis was familiar with the need for a fixture or a jig to stabilize the small pieces of wood that Lewis was planing. Other than holding the planer with one hand and the wood with the other, Lewis could not think of any other way to plane the small wood pieces. Allison concurred with Lewis's method and did not think it was dangerous or improper. After the fact, Lewis realized that using the planer that way was dangerous.

Woods testified that it was important to train employees in the use of tools. Woods was familiar with using the planer and the danger of planing small pieces of wood; he knew that a jig should be built and used to securely wedge small pieces of wood before using the planer. Lewis said that had he known to use a jig, he could have built one.

The instructions for a brand new power hand planer that was demonstrated at trial include the following as its first safety rule for planers:

> **Secure the material being planed. Never hold it in your hand or across legs.** Small workpiece must be adequately secured so the rotating planer blades will not pick it up during forward motion of the planer. Unstable support can cause the blades to bind causing loss of control and injury.

The jury found that SSG's negligence proximately caused Lewis's injury and awarded him approximately $65,000 in damages. The trial court credited SSG with Lewis's medical expenses ($11,509.85) that SSG had paid and entered a judgment for Lewis in the amount of $55,371.09. The trial court denied SSG's motion for jnov, which

asserted that it owed Lewis no duty to warn.

## Issues

Seeking reversal and rendition of a take-nothing judgment, SSG asserts two issues: (1) it had no duty to warn Lewis of the dangers in using the planer because those dangers were obvious, commonly known, or already appreciated by Lewis; and (2) there is no evidence that SSG's negligence, if any, proximately caused the injury; instead, the evidence conclusively shows that Lewis's own negligence caused the injury.

## Duty

SSG is a nonsubscriber to the Texas Workers' Compensation Act. *See* TEX. LAB. CODE ANN. § 406.002 (Vernon 2006) ("Except for public employers and as otherwise provided by law, an employer may elect to obtain workers' compensation insurance coverage."). "In an action . . . against an employer who does not have workers' compensation insurance coverage, the plaintiff must prove negligence of the employer or of an agent or servant of the employer acting within the general scope of the agent's or servant's employment." *Id.* § 406.033(d) (Vernon 2006). The employee's contributory negligence is not a defense in nonsubscriber cases. *Id.* § 406.033(a)(1); *see The Kroger Co. v. Keng,* 23 S.W.3d 347, 351-52 (Tex. 2000).

To establish negligence, a party must establish a duty, a breach of that duty, and damages proximately caused by the breach. *The Kroger Co. v. Elwood,* 197 S.W.3d 793, 794 (Tex. 2006). An employer has a duty to use ordinary care in providing a safe workplace. *Id.; Farley v. M M Cattle Co.,* 529 S.W.2d 751, 754 (Tex. 1975). It must, for example, warn an employee of the hazards of employment and provide needed safety

equipment or assistance. *Elwood,* 197 S.W.3d at 794; *Farley,* 529 S.W.2d at 754. An employer must furnish safe machinery and instrumentalities that its employees are to work with and must provide adequate assistance under the circumstances for the performance of required work. *See Humble Sand & Gravel, Inc. v. Gomez,* 146 S.W.3d 170, 186 n.45 (Tex. 2004); *Werner v. Colwell,* 909 S.W.2d 866, 869 (Tex. 1995); *Farley,* 529 S.W.2d at 754. An employer must also instruct employees in the safe use and handling of products and equipment used in and around an employer's premises or facilities, and must adequately hire, train, and supervise employees. *Patino v. Complete Tire, Inc.,* 158 S.W.3d 655, 660 (Tex. App.—Dallas 2005, pet. denied); *Castillo v. Gared, Inc.,* 1 S.W.3d 781, 786 (Tex. App.—Houston [1st Dist.] 1999, pet. denied).

An employer, however, is not an insurer of its employees' safety. *Elwood,* 197 S.W.3d at 794. An employer owes no duty to warn of hazards that are obvious, commonly known, or already appreciated by the employee and owes no duty to provide equipment or assistance that is unnecessary to the job's safe performance. *Id.* at 794-95.

As noted above, Woods testified that he did not want Allison and Lewis to use the planer because he thought that it was too dangerous for them to use without his having shown them how to use it correctly and safely. Specifically, he said:

A.  And I didn't want them to use it without me showing them how, period.

Q.  Okay. So you thought it was too risky or too dangerous for them to use it?

A.  Yes, ma'am.

Q.  Okay.  And you believe that that was something that they needed to understand, that you did not want them using it because it was too risky or too dangerous until you had a chance to give them instruction?

A.  Yes, ma'am.

Woods was familiar with the danger of planing small pieces of wood and knew that a jig should be used to plane small pieces.

The need to use a jig or some other bracing device to safely use an electric hand planer on small pieces of wood, instead of holding the plane and the wood in one's hands, is not obvious.  Nor is this safety need commonly known—an electric hand planer is a specialized tool for woodworking.  This case is thus unlike those relied on by SSG.  *See Jack in the Box, Inc. v. Skiles,* 221 S.W.3d 566, 569 (Tex. 2007) (employer did not have duty to warn employee about obvious danger in using ladder to climb over delivery truck's malfunctioning lift gate); *Elwood,* 197 S.W.3d at 795 (grocery store employer had no duty to warn courtesy clerk of danger associated with placing hand in doorjamb of automobile because that danger is common and obvious to anyone); *see also Aleman v. Ben E. Keith Co.,* 227 S.W.3d 304, 313 (Tex. App.—Houston [1st Dist.] 2007, no pet.) (employer did not have duty to warn employee about water on floor of trailer because danger associated with water on floor commonly known and obvious to everyone, and employee was aware of water on floor).

SSG argues, however, that the planer's dangers were obvious to and already known by Lewis, pointing to his testimony that he was generally familiar with the need to stabilize or brace wood while working on it, that he knew not to get his hand near

sharp moving blades, and that the planer appeared to require two hands. But Lewis's admissions do not affect our view of the critical issue in this case, which is that, as Lewis testified to, he did not know what a jig was or that he needed to use a jig to plane small pieces of wood with the hand planer—exactly what Woods would have shown and instructed Lewis to do. Lewis did not know beforehand that he should not hold a piece of wood and run it across the bottom of the electric hand planer. Indeed, Allison, who was likewise untrained in the use of the planer, saw nothing wrong or unsafe with how Lewis was using it and would have used it the same way, and Lewis had successfully planed most of the wood before his injury. And while the evidence was unclear, if Lewis had used this hand planer before, it was with Woods and on a long part of a door frame. Based on this evidence, we hold that Lewis did not already appreciate the danger of using an electric hand planer on a small piece of wood while holding it, and SSG owed a duty to Lewis to train him in the safe use of the planer and warn him of its danger. We overrule SSG's first issue.

**Sufficiency of the Evidence**

In reviewing the legal sufficiency of the evidence, we view the evidence in the light most favorable to the verdict, crediting favorable evidence if reasonable jurors could, and disregarding contrary evidence unless reasonable jurors could not. *City of Keller v. Wilson*, 168 S.W.3d 802, 807, 822 (Tex. 2005). There is legally insufficient evidence or "no evidence" of a vital fact when (a) there is a complete absence of evidence of a vital fact; (b) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact; (c) the evidence offered to

prove a vital fact is no more than a mere scintilla; or (d) the evidence conclusively establishes the opposite of the vital fact. *Merrell Dow Pharms., Inc. v. Havner*, 953 S.W.2d 706, 711 (Tex. 1997).

It is not disputed that SSG did not train Lewis in the safe use of the electric hand planer with small pieces of wood and warn him about its dangers. Woods admitted that, in the phone call with Allison, he did not specifically tell Allison not to use the planer, although he admitted that he did not want Allison and Lewis to use it because it was risky and dangerous and he had not shown them how to use it. The evidence in this case would enable reasonable and fair-minded people to reach the verdict under review. *See City of Keller,* 168 S.W.3d at 827. The evidence is therefore legally sufficient to support the jury's negligence finding. We overrule issue two.

## Conclusion

Having overruled both issues, we affirm the trial court's judgment.


BILL VANCE
Justice


Before Chief Justice Gray,
     Justice Vance, and
     Justice Reyna
Affirmed
Opinion delivered and filed September 10, 2008
[CV06]