Affirmed
and Memorandum Opinion filed August 27, 2009.

 

 

In The

 

Fourteenth Court of
Appeals

____________

 

NO. 14-08-00333-CV

____________

 

HAROLD RANDALL PUES, Appellant

 

V.

 

VETERANS OF FOREIGN WARS POST 8246, Appellee

 



 

On Appeal from the 260th
District Court

Orange County, Texas

Trial Court Cause No. D-060189-C

 



 

M E M O R A N D U M   O P I N I O N

Appellant Harold Randall Pues was injured
while assisting in the felling of a tree on the property of appellee Veterans
of Foreign Wars Post 8246 in Vidor.  Following a jury verdict favorable to
Pues, the trial court entered a judgment notwithstanding the verdict in favor
of the VFW.  On appeal, Pues contends the trial court erred in granting the
JNOV because the evidence is legally sufficient to support the jury=s findings in his
favor.  The VFW responds that the trial court did not err in granting the JNOV
and raises six cross-points.  We affirm the trial court=s judgment and so
do not reach the VFW=s cross-points.








I

Although they were not VFW members, Pues
and his friend Alfred ARusty@ Revia, Jr. had
frequented the VFW post for years and occasionally volunteered to perform odd
jobs for the VFW, including working at barbeques and fish fries, cutting grass,
and doing plumbing work.  On one occasion, a tree limb knocked a hole in a cook
shack on the VFW=s property, and Pues and Revia volunteered
to cut down and remove the tree.  Pues was injured when he was struck by a
falling limb as he and Revia attempted to fell the tree.  In April 2006, Pues
sued the VFW, alleging negligence, negligent conduct of activity on the
premises, and premises defect.  The VFW answered and designated Revia as a
responsible third party.

The case proceeded to trial and a jury
found that the VFW exercised or retained control of the tree felling, Pues and
Revia were employees of the VFW in connection with the tree felling, and that
the VFW, Pues, and Revia were each negligent.  The jury apportioned 50 percent
of the negligence to the VFW, 25 percent to Pues, and 25 percent to Revia.  The
jury also awarded Pues damages totaling $158,413.22.  On February 28, 2008, the
trial court granted the VFW=s motion for JNOV and ordered that Pues
take nothing.  The trial court=s judgment recited that A[i]t appears to
the court that there is insufficient evidence as a matter of law to support the
verdict of the jury and that a directed verdict in favor of [the VFW] would
have been proper and that judgment notwithstanding the verdict should be
rendered in favor of [the VFW].@  This appeal followed.

II








In two issues, Pues contends that the
trial court erred in granting the JNOV in favor of the VFW and that the
evidence is legally sufficient to support the jury=s findings in Pues= favor.  The VFW
responds that the evidence is legally insufficient to show that the VFW
controlled the tree felling or to show that an employer-employee relationship
existed between the VFW and Pues and Revia.  The VFW also contends that the
evidence shows as a matter of law that Pues and Revia were independent
contractors.  Further, the VFW contends that the evidence is legally
insufficient to sustain the jury=s findings under
alternative theories of recovery, including inherently dangerous activity,
nondelegable duty, premises defect, and inexperience, and that the evidence is
legally insufficient to show negligence or proximate cause.

A

A trial court may disregard a jury=s verdict and
render a judgment notwithstanding the verdict if no evidence supports one or
more of the jury=s findings or if a directed verdict would
have been proper.  Tiller v. McLure, 121 S.W.3d 709, 713 (Tex. 2003). 
When examining a legal‑sufficiency challenge, we review the evidence in
the light most favorable to the challenged finding and indulge every reasonable
inference that would support it.  City of Keller v. Wilson, 168 S.W.3d
802, 822 (Tex. 2005).  We credit favorable evidence if reasonable jurors could
and disregard contrary evidence unless reasonable jurors could not.  Id.
at 827.  The evidence is legally sufficient if it would enable reasonable and
fair‑minded people to reach the verdict under review.  Id.

B

Pues first contends that the evidence is
legally sufficient to support the jury=s answers to
Questions 1, 4, and 5.  Question 1 asked the jury:  ADid the [VFW]
exercise or retain some control over the manner in which the occurrence in
question was performed, other than the right to order the work to start or stop
or to inspect progress or receive reports?@  Question 4 asked
whether, on the occurrence in question, Pues was acting as an employee of the
VFW.  Question 5 asked the same of Revia.  The jury answered all three
questions affirmatively.








Pues asserts that the evidence shows that
both Pues and Revia testified that Nelson Reeves of the VFW was supervising
their work on the tree and telling them how to place the rope and how to cut
the tree, and that the method and procedure to cut the tree was specifically
discussed and agreed to by Pues and Revia.  To support the jury=s findings that
Pues and Revia were employees, Pues asserts that this evidence shows that the
VFW had the right to and did control the details of the work.  Additionally,
Pues argues that, to prove that he was an employee, he was not required to show
the existence of a contract for hire or that the VFW paid him for his work. 
Instead, Pues contends, there need only be an express or implied understanding
that the employer has the right to direct the details of the work and not
merely the result to be accomplished, citing Doe v. Boys Club of Greater
Dallas, Inc., 868 S.W.2d 942, 949B50 (Tex. App.CAmarillo 1994), aff=d, 907 S.W.2d 472
(Tex. 1995).  

Pues also contends the evidence is legally
sufficient to support the jury=s finding in Question 2 that the VFW was
negligent because it showed that the VFW failed to adequately supervise Pues
and Revia and failed to provide Pues with necessary machinery, equipment, and
tools.  See LMC Complete Automotive, Inc. v. Burke, 229 S.W.3d 469, 476
(Tex. App.CHouston [1st Dist.] 2007, pet. denied).  Specifically,
Pues argues that the evidence shows that both Pues and Revia testified that
with a block and tackle, crane, jig lift, or cherry picker, the tree could have
been felled with Aone cut.@  Further, Pues
asserts that he testified that the VFW caused or contributed to the accident
because it did not have more equipment for him to work with, including ropes
and ladders.  Pues also contends the evidence shows that the VFW failed to
properly supervise Pues and Revia because Pues was too close to the tree and
could not move out of the way when the top of the tree came down.

C








At trial, Pues testified that he lived in
Vidor and worked as a heavy-equipment operator for contractors at various
plants around Orange.  He started going to the VFW post even though he was not
a veteran because it was Aabout the only place around to go and
shoot pool and play dominoes and dance.@  He would usually
go there with his friend, Revia.  At the VFW, Pues and Revia would socialize
with Nelson Reeves and Ed Stunkard, both of whom were members of the VFW.  At
some point, at the request of Reeves or Stunkard, Pues and Revia began
volunteering to do odd jobs such as cooking at fish fries, cutting grass, or
plumbing.[1]


Concerning the incident that led to this
lawsuit, Pues explained that a storm had blown a tree over and a limb had
knocked a hole in the VFW=s cook shack.  Reeves and Stunkard asked
Pues and Revia Aa few times@ if they would cut
down the tree so that the shack=s roof could be repaired, and they
agreed.  Although he had felled trees before, Pues did not consider himself an
expert tree cutter.  The VFW arranged to open the gates on the property, and
when Pues and Revia arrived, Reeves was there.[2] 
Pues brought a chain saw with him, but expected the VFW to have Asome rope and a
ladder and things like that.@  Pues had a rope in the back of his
truck, and even though he did not bring it specifically for the purpose of
felling the tree, Reeves Asaid it would be sufficient,@ so they used it.

Pues explained that there was a Ahigh line@ or power line
that ran between the building and the tree, and because the VFW did not want
anything falling down on the high line, Reeves told them to Acut one side of
the tree first, all the way up on one side and then top it out and bring it
down one B B one piece at a time.@  Pues stated that
the VFW also wanted some of the wood cut up in a certain size to use in their
barbeque pit, and the rest to be put in a brush pile.  

Pues testified that Reeves was a Aknow-it-all@ and that he was Atelling [him] how
to do [his] job.@  When asked if he felt like Reeves
exercised control over how he did the work, Pues answered, AThat=s correct.@ 








Pues and Revia used Pues=s rope to lower
the limbs to the ground as they were cut.  After Pues and Revia cut the limbs
from one side of the tree, they proceeded to cut the top of the tree.  Revia
was in the tree and Pues was standing on the ground below the tree holding the
rope, when Revia cut the top of the tree and it fell on Pues and injured him. 
Pues was not on a ladder, he stated, because A[t]hey didn=t have a ladder.@  When asked if he
thought the rope was long enough, Pues testified, Aat the time, yes B B it was long
enough.@  

Pues also testified concerning the treatment
for his injuries, his damages, and his lost wages.  When asked whether he was
an employee of the VFW, Pues testified that he understood being an employee to
mean that Ayou get paid.@  

During the presentation of the defense,
the VFW presented portions of Pues=s earlier
deposition testimony.  In his deposition, Pues explained that the reason he and
Revia were removing the limbs from one side of the treeCspecifically, the
side opposite the buildingCwas so that when the tree came down the
branches would not catch the electrical line running to the building and bring
the line down with the tree.  When the top of the tree came down, Pues stated
that he was four or five feet from the tree because the rope was not long
enough for him to stand farther away.  However, he testified that, at the time,
he did not think they needed a longer rope, and there was no discussion
beforehand about whether the rope was long enough.  When asked if there was
anything preventing him from getting a longer rope when he saw that he had to
stand within four or five feet of the trunk, Pues stated that he did not know
the rope was too short.  But he admitted that he knew that he could stand no
more than four or five feet away from the tree because of the length of the
rope.  Further, even when Revia was cutting off the top of the tree and Pues
was standing there, Pues still believed he had enough rope.  








When asked what the VFW did or did not do
that caused or contributed to the accident, Pues stated that the VFW Acould have had a
little more equipment there for us to work with@ such as ropes and
ladders.  Further, if the VFW had a cherry picker, Pues could have handled it Aall in one lick.@  However, Pues
also acknowledged that he had cut trees in the same wayCby trimming the
limbs, cutting the top off, and removing the trunk in sectionsCAmany times.@  He also had
felled trees this way with Revia on a few occasions.  Pues agreed that he was
not cutting down the tree on the VFW property differently than he had done it
on previous occasions.  He also admitted that there was no reason he could not
have declined the request to cut down the tree.  Further, Pues admitted that if
he had it to do over again, there was nothing he would have done differently in
cutting the tree down.  He testified that he would not have stood farther away
from the tree or gotten a longer rope.

Revia=s testimony was
presented to the jury by deposition.[3] 
Revia testified that he was a construction worker and that he, like Pues,
started going to the VFW post to sit in the air conditioning, drink beer, play
dominoes, shoot pool, and socialize.  He and Pues, whom he had known for about
twenty years, would go there two or three times a week.  Revia was neither a
veteran nor a member of the VFW.  

Revia explained that from time to time
Reeves and Stunkard would ask them to do Asmall stuff@ for the VFW like
plumbing work and mowing the grass.  Reeves and Stunkard would tell them how to
do these things.  When asked who controlled the specifics of the mowing and
plumbing work, Revia testified that AMr. Nelson
[Reeves] would tell me what he wanted done and point it out, and I=d tell him what I
needed.@  He agreed that
Reeves was Ahands-on@ and a Aknow-it-all.@  Revia also
volunteered at fish fries and barbeques, and the VFW, usually through Reeves,
would provide the food and tell him what to cook.  On cross-examination, Revia
agreed that he was free to use his own means and methods when performing the
plumbing and mowing work, and he cooked according to what the VFW planned to
serve. 








Revia explained that some time after the
tree limb had fallen through the roof of the cook shack, they were all sitting
in the VFW post at the domino table when Reeves and Stunkard started talking
about removing the tree and fixing the shack=s roof.  They said
the VFW could not afford a tree service and carpenters, so Revia told them he
could do it for them.  They had three or four conversations about the tree,
during which the VFW told him that they wanted the wood cut into lengths for
firewood and stacked by the barbeque pit.  Concerning avoiding the high line,
they Aall stood around
the tree and talked about how we were going to have to do it.@  Revia agreed
that the way he did it Awas the way they told [him] to do it.@  He also testified
that certain equipment, such as block and tackle, cranes, and jig lifts can be
used to cut down trees more easily.  Revia told Reeves that if they had some
heavy equipment they could Ajust snatch onto the tree and cut it one
time and take the whole tree out.@  But in response,
Reeves stated that the VFW could not afford such equipment.

Revia testified that the VFW did not
provide the chain saw or rope because it did not have them, and that Reeves
told them to use the rope they had in the back of the truck.  Because the VFW
had no ladder, Revia used his own climbing spikes and safety harness to climb
up the tree.  Revia explained that he cut the limbs from one side of the tree because
the fence, the building, and the power line, which ran through the tree limbs
to the building, were in close proximity.  He agreed that it Ahad to be done
that way.@  When he cut the top of the tree, it was supposed to
fall over and be let down with the rope Pues was holding, but instead it jerked
the rope out of Pues=s hand and fell to the ground, injuring
Pues.  








On cross-examination, Revia explained that
when he volunteered to fell the tree, he was also speaking for Pues, and that
felling the tree was Aa verbal agreement between all of us.@  Revia acknowledged
that Stunkard asked him several times when he and Pues would fell the tree. 
Then, on one weekend when he and Pues were not working and Adidn=t have anything to
do,@ they went to the
VFW in Pues=s truck.  Reeves and Stunkard unlocked the gates for
them and let them in.  Pues had his chain saw and a rope in the back of his
truck; Revia brought his harness and spikes.  Revia stated that the VFW had
told Pues and him beforehand that the VFW did not have a chain saw or other
equipment and Ato bring ours.@  Revia agreed
that, because of the confined space created by the building, the fence, and the
power line, there was no other way to fell the tree.  He also stated that it
was Apretty much
standard procedure when you are taking a tree down like that.@

Revia testified that he had trimmed and
felled trees in the same way Amany times@ before, and that
he had felled trees of the same size that way about ten or fifteen times.  He
and Pues had done it together about five times.  Consequently, Revia testified,
when he told Stunkard he could fell the tree, he knew how he was going to do
it.  Further, when they were actually felling the tree, he agreed that he was
doing it the way he had originally anticipated doing it.  Revia also testified
that, in the previous five times he and Pues had felled a tree, Revia was the
one in the tree.  

While they were working on the tree,
Reeves would tell Revia Awhich limb to put a rope on and to make
sure [he] was tying knots.@  But if Revia disagreed he would tell
Reeves how he would do it, and, because Revia was the one Aup in the tree,@ he would usually win
the disagreements.  Revia agreed that he understood he was going to fell the
tree using his own means and methods, and although someone from the VFW could
make suggestions, he was going to rely on his own experience to complete the
job.  Revia also testified that he never considered himself an employee of the
VFW, and Pues never said anything to him to indicate that Pues considered
himself an employee.  Revia agreed that neither he nor Pues nor the VFW were
responsible for the accident.  








Revia also testified that he and Pues had
the equipment they needed to do the job right, and he knew nothing about the
rope not being long enough.  He agreed that Reeves suggested they use the rope
they had in the back of the truck.  Revia did not hear Reeves telling Pues
anything about how to do his part of the job.  He also stated that no one at
the site was more knowledgeable about how to fell the tree than he, and Pues
was probably as knowledgeable as he.  When Revia went to cut the top section of
the tree, he knew that Pues was positioned about three or four feet away from
the tree holding the rope.  Revia stated that if he had it to do over, he would
not trim and fell the tree any differently.  He also testified that he would
not use a block and tackle or jig because there was really no room to get
anything like that in there. 

D

Much of the evidence at trial and the
parties= arguments on
appeal are directed to whether Pues and Revia were employees or independent
contractors and whether, in either case, the VFW exercised sufficient control
over Pues=s and Revia=s work to be
liable for Pues=s damages.  However, for purposes of
resolving Pues=s issues, we will assume without deciding that the
evidence is legally sufficient to support the jury=s findings that
Pues and Revia were the VFW=s employees, and address whether Pues
presented legally sufficient evidence that the VFW was negligent and that its
negligence caused Pues=s injuries.

To impose liability for negligence, Pues
must present evidence of a legal duty owed by one person to another, a breach
of that duty, and damages proximately caused by the breach.  Kroger Co. v.
Elwood, 197 S.W.3d 793, 794 (Tex. 2006).  An employer has a duty to use ordinary
care in providing a safe workplace.  Id.  It must, for example, warn an
employee of the hazards of employment and provide needed safety equipment or
assistance. Id.  But an employer is not an insurer of its employees= safety.  Id. 
It owes no duty to warn of hazards that are commonly known or already
appreciated by the employee and no duty to provide equipment or assistance that
is unnecessary to the job=s safe performance.  Jack in the Box v.
Skiles, 221 S.W.3d 566, 568 (Tex. 2007) (per curiam); Kroger Co.,
197 S.W.3d at 794.  Moreover, when an employee=s injury results
from performing the same character of work that employees in that position have
always done, an employer is not liable if there is no evidence that the work is
unusually precarious.  Kroger Co., 197 S.W.3d at 794. 








Proximate cause requires both
foreseeability and cause in fact.  D. Houston, Inc. v. Love, 92 S.W.3d
450, 454 (Tex. 2002).  Foreseeability exists if the actor, as a person of
ordinary intelligence, should have anticipated the dangers his negligent act
creates for others.  Id.  Cause in fact means that the defendant=s act or omission
was a substantial factor in bringing about the injury which would not otherwise
have occurred.  Union Pump Co. v. Allbritton, 898 S.W.2d 773, 775 (Tex.
1995), abrogated on other grounds, Ford Motor Co. v. Ledesma, 242
S.W.3d 32 (Tex. 2007).  It is not enough to show cause in fact of the defendant=s negligence did
no more than provide a condition which made the injury possible.  Id. at
776. The plaintiff may not establish these elements by mere conjecture, guess,
or speculation.  Doe v. Boys Clubs of Greater Dallas, Inc., 907 S.W.2d
472, 477 (Tex. 1995).  Rather, the evidence must go further and show that such
negligence was the proximate, and not the remote, cause of the resulting
injuries and justify the conclusion that such injury was the natural and
probable result thereof.  Id.  Even if the injury would not have
occurred but for the defendant=s actions, the nexus between the defendant
and the plaintiff=s injuries may be too attenuated to
constitute legal cause.  Id.; Union Pump Co., 898 S.W.2d at 776. 








Pues contends the evidence supports the
jury=s findings that
the VFW and Revia were negligent.  First, Pues contends that the VFW breached a
duty to provide necessary machinery, equipment, and tools for Pues, pointing to
Pues=s and Revia=s testimony that
the tree could have been felled and removed with one cut with a block and
tackle, crane, jig lift, or cherry picker.  But although there was testimony
that machinery or equipment of the type Pues described could be used to fell
trees more easily, the testimony also showed that such machinery or equipment
could not have been used in the confined area where the tree was located. 
Revia testified he told Reeves that if they had some heavy equipment they could
just Asnatch@ the whole tree at
once, but he also admitted that the tree had to be cut in the way they did it
because of its proximity to the fence, the cook shack, and the power line, and
that there was no other way to remove the tree.  Revia also testified that the
manner in which they removed the tree was Astandard procedure@ in that
situation, and that when he volunteered to fell the tree, he anticipated
removing it in the manner they ultimately used.  Pues likewise admitted that
the reason they were trimming the limbs on one side first was so that when the
tree fell, it would not bring down with it the electrical line running to the
cook shack.  Further, Pues stated that if he had it to do over again, he would
not have done anything differently.  

Neither Pues nor Revia testified that a
block and tackle, crane, jig lift, or cherry picker should have been used in
this specific situation instead of using a rope and chainsaw or that Pues would
not have been injured if another method had been used.  Additionally, there was
no evidence that it was improper or unsafe to fell the tree in the manner they
attempted.  Indeed, Pues agreed that he was cutting down the tree on the VFW
property in the same way he had felled trees on previous occasions.  An
employer has no duty to provide equipment or assistance that is unnecessary to
the job=s safe
performance.  Kroger Co., 197 S.W.3d at 794; LMC Complete Automotive,
Inc., 229 S.W.3d at 476; see also Collins v. Singer Sewing Mach. Co.,
239 F.2d 705, 706 (5th Cir. 1957) (employer not liable for failing to provide
tools and equipment when plaintiff testified that he knew of no tools or
equipment that employer could have supplied). 








Pues also points to his testimony that the
VFW could have provided more equipment for him to work with, including ropes
and ladders.[4] 
Specifically, Pues contends that the VFW failed to supply sufficient rope to
Pues, which resulted in him standing directly under the top of the tree at a
distance of only three to five feet when he was injured.  Pues acknowledges his
testimony that he believed he had sufficient rope, but argues that when read in
context, his testimony shows that he believed he had sufficient rope when he
removed it from his truck and at the time Revia was beginning to remove the top
of the tree, but that he was standing too close to the tree because the length
of rope was insufficient.  Pues also testified that he thought he had enough
rope to stand more than four or five feet from the tree.  From this evidence,
Pues contends, the jury could have determined that but for the VFW=s failure to
supply a longer rope, Pues would have been further away from the tree and would
have avoided the accident.

We conclude that when viewed in context
the evidence does not support Pues=s argument.  Pues
testified that Aat the time@ he and Revia did
not think they needed a longer rope, and after they took his rope from the
trunk and examined it, they had no discussion about the sufficiency of the rope=s length.  This
testimony shows that at the time Pues and Revia undertook the job, they
believed they had sufficient rope.  Pues also admitted that during the job as
he was standing four or five feet from the tree and Revia was preparing to cut
off the top of the tree, he believed he had enough rope.  At no time did he
appear to believe the rope was insufficient or that he should have been
standing farther away.  Also, Revia testified that he and Pues had the
equipment they needed to perform the job correctly, and he knew nothing about
the rope not being long enough.  Indeed, Revia testified that, when he went to
cut the top of the tree that fell on Pues, he knew where Pues was positioned
because he and Pues Awere talking about it.@  He explained
that Pues was standing about three or four feet from the tree holding the rope
so that he could Aput [his] foot against it and have some
leverage.@  Likewise, Pues himself testified that if he had it
to do over again, he would not have stood farther away from the tree or gotten
a longer rope.[5] 









Thus, the evidence does not support Pues=s assertion that
if he had additional rope he would have stood farther away from the tree and
avoided the accident.  See City of Keller, 168 S.W.3d at 812 (stating
that Aevidence cannot be
taken out of context in a way that makes it seem to support a verdict when in
fact it never did@).  Viewing the evidence in a light most
favorable to the verdict, and assuming the VFW was obligated to supply a rope,
there is no evidence that its failure to do so was a proximate cause of Pues=s injuries.  See
Union Pump Co., 898 S.W.2d at 775. 

Next, Pues asserts that the VFW failed to
adequately supervise him because he Awas so close to
the tree when he was injured that he was surprised and could not move out of
the way.@  But as we have
discussed, there was no evidence that Pues should not have been standing near
the tree or that if he had been farther away from the tree he would not have
been injured.  To the contrary, Revia=s testimony
indicates that Pues was standing where he was to get Aleverage@ before the tree
top was lowered down, and both Revia and Pues acknowledged that if they had it
to do over again, they would have done nothing differently in felling the
tree.  There was also no evidence that Reeves or anyone else connected with the
VFW gave any suggestions or instructions to Pues or Revia that caused or
contributed to Pues=s injuries.  Thus, this case is
distinguishable from Lee Lewis Construction, Inc. v. Harrison, 70 S.W.3d
778 (Tex. 2001), cited by Pues, in which the supreme court held that there was
legally sufficient evidence of proximate cause when a general contractor=s supervisor knew
of and approved acts that were dangerous and unsafe.  See id. at 784B85.








We understand Pues=s complaint to be
that the VFW failed to warn him of the possible dangers of standing near a tree
being cut down.  But an employer owes no duty to warn of hazards that are
commonly known or already appreciated by the employee.  Jack in the Box,
221 S.W.3d at 568; Kroger Co., 197 S.W.3d at 794.  The duty to warn or
caution an employee of a danger arises when (1) the employment is of a
dangerous character requiring skill and caution for its safe and proper
discharge, and (2) the employer is aware of the danger and has reason to know
the employee is unaware of the danger.  Nat=l Convenience
Stores Inc. v Matherne, 987 S.W.2d 145, 149 (Tex. App.CHouston [14th
Dist.] 1999, no pet.); Allen v. A & T Transp. Co., 79 S.W.3d 65, 70
(Tex. App.CTexarkana 2002, pet denied).  An employer=s duty to instruct
applies only to an inexperienced employee, not to one who is experienced in the
work he is assigned.  Matherne, 987 S.W.2d at 149; Allen, 79
S.W.3d at 70.  








Here, the VFW was not in the business of
felling trees, and there was no evidence that Reeves had any experience or
knowledge concerning cutting down trees.  Indeed, both Pues and Revia
characterized Reeves as a Aknow-it-all,@ which to Pues
meant that Reeves was A[s]omebody that knew a little bit about
everything.@  In contrast, Pues and Revia were experienced tree
cutters who attempted to fell the tree in the same manner they had done on
previous occasions.  Revia testified that he had worked for a tree service and
had felled trees in the same way many times before, and had felled trees with
Pues several times before.  Revia also testified that no one at the site was
more knowledgeable about cutting trees than he, and that Pues may have been as
knowledgeable.  Pues also acknowledged that he had cut down trees in the same
way many times, and he had done so with Revia Aa few times.@  Pues also
testified that he could have declined the VFW=s request to cut
down the tree.  Moreover, both Revia and Pues testified that they would have done
nothing differently if they had it to do over again.  Under these facts, the
VFW had no duty to warn Pues and Revia of any danger associated with standing
under a tree as it is being cut, especially when they were experienced at
felling trees in the same manner and voluntarily decided to fell the tree.  See
Jack in the Box, 221 S.W.3d at 568 (holding employer owed no duty to
experienced employee who was injured when he voluntarily decided to use ladder
to unload trailer injured when trailer=s lift gate was
broken); Matherne, 987 S.W.2d at 149 (holding that employer had no duty
to instruct employee concerning dangers of driving his car when performing
job-related duties); Allen, 79 S.W.3d at 71 (holding that employer had
no duty to instruct experienced employee in his chosen trade); see also Davis
v. W.T. Carter & Bros., 19 S.W.2d 336, 338 (Tex. Civ. App.CBeaumont 1929,
writ ref=d) (holding that
lumber manufacturer was not negligent when employee was struck by limb that
fell unexpectedly as employee was cutting down tree).  Even if the VFW did owe
a duty to supervise Pues and Revia=s work, there is
no evidence that anyone connected with the VFW failed to provide proper
instruction or gave unsafe or dangerous instructions that caused Pues=s injuries.

Lastly, Pues contends that the VFW was
responsible for Revia=s negligence.  See LMC Complete
Automotive, 229 S.W.3d at 476.  Pues asserts that the jury could have found
that Revia was negligent for cutting the top of the tree without sufficient
clearance to assure that Pues would not be hit by the falling tree, as the VFW=s counsel argued
to the jury and in its motion to designate Revia as a responsible party.  But
jury argument and motions are not evidence.  There is no evidence that Revia
was careless or failed to ascertain where Pues was as he cut off the top of the
tree.  Pues testified that when Revia cut the top of the tree, the limb
suddenly Ajust kicked out@ and he could not
get away from it.  There was no testimony that Revia was cutting the tree in an
improper or unsafe way.  And, as discussed above, Revia knew where Pues was
standing when he prepared to cut off the top of the tree because they were
discussing Pues=s location at the time.  Because there is
no evidence that Revia was negligent in cutting the tree, the VFW cannot be
liable on this basis.  Cf. Leadon v. Kimbrough Bros. Lumber Co., 484
S.W.2d 567, 568B570 (Tex. 1972) (holding evidence was
legally sufficient to support finding that employer was negligent for injury
sustained by employee while felling trees when coworker who was hired to watch
for falling limbs testified that he Ajust forgot to
look on this particular occasion@).

Accordingly, we hold that the trial court
did not err in granting the VFW=s motion for JNOV and we overrule Pues=s issues.

 

 

 

 








* * *

We overrule Pues=s issues and
affirm the trial court=s judgment.

 

 

 

 

/s/      Jeffrey
V. Brown

Justice

 

 

 

 

 

Panel consists of Justices Frost, Brown, and Boyce.









[1]  At the time of trial, Reeves was deceased.  Stunkard
did not testify.





[2]  Pues testified that Reeves, Stunkard, and some
others came to watch, but although some came and went, Reeves stayed there the
entire time.





[3]  Revia was incarcerated at the time of the
deposition, and apparently did not appear at trial for this reason.





[4]  On appeal, Pues does not argue that he needed a
ladder to properly perform his part of the tree-cutting operation.  His only
testimony concerning a ladder was that he was not on a ladder at the time
because the VFW had no ladder.  However, Pues and Revia had cut down trees in a
similar way at least five other times, and neither of them testified that Pues
had used a ladder before or how he would have used a ladder if he had one.  The
only specific testimony about the use of a ladder was Revia=s testimony that, because there was no ladder, he used
his climbing spikes and safety harness to climb up the tree.  Revia also
testified that when he and Pues had previously cut trees, he was the one who
went up the tree.  There was no evidence that the lack of a ladder in any way
caused or contributed to Pues=s injuries. 





[5]  Pues argues that the VFW=s argument to the jury that Pues was negligent because
he was too close to the tree in a Azone
of danger@ supports his argument that the rope was too short. 
But argument of counsel is not evidence.  McCain v. NME Hosps., Inc.,
856 S.W.2d 751, 757 (Tex. App.CDallas 1993, no
writ) (AMotions and arguments of counsel are not evidence.@).