

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

———————————————

No. 02-17-00429-CV

———————————————

ABDIEL LOPEZ, Appellant

V.

CREST GATEWAY, LP AND CREST ASSET MANAGEMENT, INC., Appellees

---

On Appeal from the 96th District Court
Tarrant County, Texas
Trial Court No. 096-279371-15

---

Before Sudderth, C.J.; Walker and Meier, JJ.
Memorandum Opinion by Justice Meier

## MEMORANDUM OPINION

Appellant Abdiel Lopez appeals the trial court's summary-judgment orders in favor of Appellees Crest Gateway, L.P. (CG) and Crest Asset Management, Inc. (CAM) on Lopez's personal-injury claims. Because Lopez waived his complaints against CG, and because the trial court properly granted the summary judgments, we will affirm.

## I. BACKGROUND

CG owns and CAM manages the Crest Centreport Apartments. Ravi Naidu, a part owner of CG, CAM, or both, hired Tower Painting and Construction, LLC to paint the exterior of Crest Centreport's apartment buildings.[1] Lopez worked for Tower and was responsible for painting the apartments' balcony doors and railings. Instead of accessing the second- and third-floor apartment balconies through the apartments, Tower's workers, including Lopez, performed a maneuver in which they crossed from an extension ladder that was leaning against the exterior of the apartment building to each balcony and climbed over the balcony's railing (with painting equipment in hand).

On a June afternoon in 2015, Lopez was working on apartment building 18 when he positioned his thirty-two foot extension ladder against the building, climbed up to a third-floor balcony, and reached over to the railing with his left hand so that

_____

[1]Naidu had previously hired Tower to perform other painting projects.

2

he could cross over it and onto the balcony. Unfortunately for Lopez, the screws that secured the railing to the wall "gave out," the railing detached from the wall, and Lopez fell down to the ground. Lopez was taken to the hospital, where he was treated and received physical therapy for his injuries. Lopez recalled that at the time of the fall, he was still standing on his ladder, but Romero Cruz, Lopez's boss, heard that Lopez was standing on top of the railing when he fell.

Lopez sued CG and Tower for negligence, negligent activity, and premises liability. By order signed on January 27, 2017, the trial court granted CG's no-evidence and traditional motions for summary judgment and rendered a take-nothing judgment against Lopez.[2] Lopez later added CAM to the lawsuit but dropped his claims against CG. By order signed on October 23, 2017, the trial court granted CAM's no-evidence and traditional summary-judgment motions and rendered a take-nothing judgment against Lopez.[3] The trial court later signed a default judgment against Tower and in favor of Lopez for over $1.4 million.

## II. SUMMARY JUDGMENTS

In his second issue, Lopez challenges the trial court's summary-judgment rulings in favor of both CG and CAM, arguing that he met his burden to produce

[2]With the exception of one objection to CG's traditional motion, the trial court denied Lopez's objections to CG's no-evidence and traditional motions for summary judgment.

[3]The record contains no order on Lopez's objections to CAM's summary-judgment motions.

3

evidence raising a genuine issue of material fact. CG responds that Lopez waived his CG-related complaints because after the trial court granted the interlocutory summary judgment in favor of CG, Lopez filed an amended petition that dropped CG as a defendant and that omitted all of his claims against it. On the merits, both CG and CAM respond that the trial court properly granted them summary judgment on Lopez's negligence and premises liability claims because, among other reasons, Lopez, an independent contractor, failed to produce any evidence that CG and CAM owed him a duty of care. We agree with both the waiver and the summary-judgment arguments.

## A.    Waiver—CG

Filing an amended petition that does not include a cause of action effectively nonsuits or voluntarily dismisses the omitted claim as of the time the pleading is filed, unless circumstances indicate otherwise, such as when the amended petition contains statements demonstrating an intent to preserve the omitted claim. *FKM P'ship, Ltd. v. Bd. of Regents of Univ. of Hous. Sys.*, 255 S.W.3d 619, 632–33 (Tex. 2008); *Spellman v. Love*, 534 S.W.3d 685, 690 (Tex. App.—Corpus Christi 2017, pet. denied). The same principle holds true for an amended petition that omits a previously named defendant. *Webb v. Jorns*, 488 S.W.2d 407, 409 (Tex. 1972); *Spellman*, 534 S.W.3d at 690. For appellate purposes, abandoning a cause of action or a defendant in an amended pleading waives any error by the trial court regarding the abandoned cause of action or defendant. *Spellman*, 534 S.W.3d at 690.

4

Lopez originally sued only Tower and CG. After the trial court granted CG an interlocutory summary judgment on January 27, 2017, and after filing second- and third-amended petitions that retained his claims against CG, Lopez filed a fourth-amended petition on April 12, 2017, that dropped CG as a defendant. The fourth-amended petition removed CG from the case style, omitted any mention of CG, asserted no claims against CG, and contained no statements indicating any intent to reserve the claims against CG, including for purposes of appeal. *Cf. Ortiz v. Collins*, 203 S.W.3d 414, 421 n.4 (Tex. App.—Houston [14th Dist.] 2006, no pet.) (reasoning that plaintiff who expressly reserved right to pursue claims on appeal did not abandon claims by failing to include them in amended petition). Nor does the record indicate that the omission was inadvertent. *See also Am. Petrofina, Inc. v. Allen*, 887 S.W.2d 829, 831 (Tex. 1994) (reasoning that omission from amended petition was inadvertent when defendant was added to later-amended petition). Lopez consequently waived any error involving the trial court's summary judgment on his claims against CG.[4] *See, e.g., Wallace v. New Teal Run, Ltd.*, No. 01-99-00085-CV, 2000 WL 351713, at *2 (Tex. App.—Houston [1st Dist.] Apr. 6, 2000, no pet.) (op., not designated for publication) (reasoning similarly); *Radelow-Gittens Real Prop. Mgmt. v. Pamex Foods*, 735 S.W.2d 558, 559–60 (Tex. App.—Dallas 1987, writ ref'd n.r.e.) (same).

---

[4]In any event, as we explain, the trial court properly granted summary judgment for CG.

**B.   No-Evidence Summary Judgments**

**1.   Standard of Review**

When a party moves for summary judgment under both rules 166a(c) and 166a(i), we will first review the trial court's judgment under the standards of rule 166a(i). *Ford Motor Co. v. Ridgway*, 135 S.W.3d 598, 600 (Tex. 2004).

After an adequate time for discovery, the party without the burden of proof may, without presenting evidence, move for summary judgment on the ground that there is no evidence to support an essential element of the nonmovant's claim or defense. Tex. R. Civ. P. 166a(i). The trial court must grant the motion unless the nonmovant produces summary-judgment evidence that raises a genuine issue of material fact. *See id.* & cmt.; *Hamilton v. Wilson*, 249 S.W.3d 425, 426 (Tex. 2008). When reviewing a no-evidence summary judgment, we examine the entire record in the light most favorable to the nonmovant, indulging every reasonable inference and resolving any doubts against the motion. *Sudan v. Sudan*, 199 S.W.3d 291, 292 (Tex. 2006). We credit evidence favorable to the nonmovant if reasonable jurors could, and we disregard evidence contrary to the nonmovant unless reasonable jurors could not. *Timpte Indus., Inc. v. Gish*, 286 S.W.3d 306, 310 (Tex. 2009) (quoting *Mack Trucks, Inc. v. Tamez*, 206 S.W.3d 572, 582 (Tex. 2006)).

**2.   Duty**

The general rule is that an owner or occupier of land has a duty to use reasonable care to keep the premises in a safe condition. *Redinger v. Living, Inc.*, 689

S.W.2d 415, 417 (Tex. 1985). This duty may subject the premises owner to direct liability for negligence in two situations: (1) those arising from a premises defect and (2) those arising from an activity on the premises. *Id.*; *see also Clayton W. Williams, Jr., Inc. v. Olivo*, 952 S.W.2d 523, 527 (Tex. 1997). "[N]egligent activity encompasses a malfeasance theory based on affirmative, contemporaneous conduct by the owner that caused the injury, while premises liability encompasses a nonfeasance theory based on the owner's failure to take measures to make the property safe." *Del Lago Partners, Inc. v. Smith*, 307 S.W.3d 762, 776 (Tex. 2010) (footnotes omitted). Lopez alleged negligence claims based upon both premises defect and activity theories.

Logically, we utilize the same standards for negligent-activity claims that we do for premises-liability claims in which the dangerous condition arises from the independent contractor's work activity. *Compare Gen. Elec. Co. v. Moritz*, 257 S.W.3d 211, 214–15 (Tex. 2008), *and Hernandez v. Hammond Homes, Ltd.*, 345 S.W.3d 150, 153 (Tex. App.—Dallas 2011, pet. denied), *with Coastal Marine Serv. of Tex., Inc. v. Lawrence*, 988 S.W.2d 223, 225–26 (Tex. 1999), *and Durbin v. Culberson Cty.*, 132 S.W.3d 650, 660–61 (Tex. App.—El Paso 2004, no pet.). Generally, an employer of an independent contractor has no duty to ensure that the independent contractor performs its work in a safe manner. *Moritz*, 257 S.W.3d at 214; *Coastal Marine*, 988 S.W.2d at 225. But a premises owner may be held liable when the owner retains a right to control the contractor's work. *Moritz*, 257 S.W.3d at 214; *Coastal Marine*, 988

7

S.W.2d at 225–26. The right to control must be more than a general right to order work to stop and start, or to inspect progress. *Coastal Marine*, 988 S.W.2d at 226. "The supervisory control must relate to the activity that actually caused the injury, and grant the owner at least the power to direct the order in which work is to be done or the power to forbid it being done in an unsafe manner." *Id.*; *Elliott-Williams Co., Inc. v. Diaz*, 9 S.W.3d 801, 804 (Tex. 1999) (requiring control over means, methods, or details of independent contractor's work). A right to control may be expressed by contract or implied by conduct. *Moritz*, 257 S.W.3d at 214.

Lopez contends that CAM retained a contractual right to control his work via an Apartment Management Agreement between CG and CAM, but neither Tower nor Lopez were parties to the agreement or third-party beneficiaries, and in no provision did CAM unilaterally undertake a right to control any independent contractor's future work.[5] *See Gonzalez v. VATR Constr. LLC*, 418 S.W.3d 777, 786 (Tex. App.—Dallas 2013, no pet.) ("The Estate's reliance upon contractual provisions in contracts to which Gonzalez is not a party or third-party beneficiary is misplaced."). The agreement instead sets out the various rights and obligations

---

[5]Section 2.1(h), entitled "Repairs and Maintenance," provides that CAM agrees "to make, and supervise the making of, all repairs that are the obligation of" CG. Section 2.1(i), entitled "Renovations," provides that CAM "shall supervise and monitor" renovations to the property. Neither provision authorizes CAM to direct the method or means by which an independent contractor performs its work, including how Tower and Lopez painted the balcony doors and railings.

between CG and CAM regarding CAM's management of the Crest Centreport Apartments.

Nor is there any evidence that either CG or CAM actually exercised control over the manner in which Lopez (or any Tower worker) performed his work.[6] Lopez confirmed in his deposition testimony that all of his work-related instructions came from Cruz, his boss, and that he did not have any "significant conversations" with any Crest Centreport employees prior to the fall. According to Lopez, Cruz would explain how he wanted the work performed at the beginning of each job, and because Lopez "already knew how the boss liked it done," he would show up each day and perform his work without receiving any instructions from another person.

At his deposition, Cruz testified that Tower's workers "had a habit" of accessing the balconies by climbing over the railings, that he never heard Naidu say that Naidu did not want Tower's workers accessing the balconies through the apartments, and that on this job, he knew his workers would be accessing the balconies by "jumping over" the railings. Neither Cruz nor anyone else with Tower ever had a conversation with Naidu or an apartment employee about accessing the balconies through the front door.

---

[6]Among other things, Lopez vaguely alleged that the defendants were negligent for failing to inspect the property, failing to provide safety and other equipment, and failing to warn about the defective balcony.

9

And finally, property manager Shannon Newell explained that Naidu gave her no instructions about how Tower's workers should do their work (he only told her, "We're painting the property"), that she did not tell Tower's workers "anything" about their work (she assumed they had received their instructions from their boss), and that she was not aware of anyone who was affiliated with CG or CAM that had supervised or directed Tower's workers. Newell periodically saw Tower's workers painting the apartment buildings, but merely observing the workers painting—including without any safety equipment—falls far short of actually instructing them on the details of their work. *See Hernandez*, 345 S.W.3d at 154 ("Strowd's knowledge of the risk of roofers' falling and his and appellees' failure to require fall-protection equipment is not evidence that Strowd and appellees actually exercised control over the manner in which Brito's employees performed their work."). Lopez seems to suggest that CG or CAM negligently created the dangerous condition posed by the balcony, but there is no evidence to support that theory.[7]

Insofar as Lopez complains about a defect that existed when he entered the property, under this theory, the owner has a duty to inspect the premises and to warn the independent contractor of dangerous conditions that are not open and obvious and that the owner knows or should know exist. *See Moritz*, 257 S.W.3d at 214; *Coastal*

---

[7]Newell testified that Crest Centreport had not received any complaints from its residents about the balcony rails and that an inspection performed by the city several months before the accident did not uncover any problems with the railings.

*Marine*, 988 S.W.2d at 225. Premises defects of this type are ones "'in which the danger did not arise through the work activity of the subcontractor/invitee.'" *Coastal Marine*, 988 S.W.2d at 225 (quoting *Shell Chem. Co. v. Lamb*, 493 S.W.2d 742, 746 (Tex. 1973)). "Only concealed hazards—dangerous in their own right and independent of action by another—that are in existence when the independent contractor enters the premises fall into this first subcategory of premises defects." *Id.*

As best we can tell, Lopez seems to suggest that the premises was defective because unit 1812's balcony rail failed when he attempted to cross over it and because he had to use a long ladder to access the balcony.[8] But there is no evidence that the railing failed until Lopez attempted to vault over it, *see Coastal Marine*, 988 S.W.2d at 225 ("The pinch point area on Coastal's crane . . . posed no danger until Campbell put the crane into operation."), and the danger of using an extension ladder several stories up is open and obvious, *see Jack in the Box, Inc. v. Skiles*, 221 S.W.3d 566, 569 (Tex. 2007) (reasoning that dangers associated with using ladder to climb over lift gate were obvious). To the extent that Lopez argues that CG and CAM either knew or should have known about the alleged defective conditions, their actual or constructive knowledge is of no consequence because the conditions of which Lopez complains

---

[8]Lopez averred in part that CAM "exercised control over the manner, method, means, and details over [the] work of Plaintiff" because CAM "invited TOWER PAINTING workers to paint the exterior balcony of the apartment complex on [CAM's] premises, and [CAM] knew that TOWER's workers were going to have to use ladders to reach the exterior balcony on [CAM's] premise[s]."

11

were not concealed, arose in connection with his own work activity, or were not preexisting—other essential elements of Lopez's premises-defect claim.

Lopez failed to meet his burden to respond with evidence raising a genuine issue of material fact that either CG or CAM owed him a duty of care. *See* Tex. R. Civ. P. 166a(i). The trial court did not err by granting summary judgment in favor of both CG and CAM on no-evidence grounds. We overrule this part of Lopez's second issue and do not reach his remaining arguments under this issue. *See* Tex. R. App. P. 47.1. Because the summary judgments were proper on no-evidence grounds, we also need not reach Lopez's first issue, in which he argues that the trial court abused its discretion by denying his objection to part of CG's traditional summary-judgment motion. *See id.*

### III. CONCLUSION

Having overruled part of Lopez's dispositive second issue, we affirm the trial court's summary-judgment orders.

/s/ Bill Meier
Bill Meier
Justice

Delivered: November 8, 2018