**ROWE v. SHAW et al. (No. 9087.)**

Court of Civil Appeals of Texas. Galveston. June 8, 1928.

Rehearing Denied Oct. 11, 1928.

Homer Stephenson, of Houston, for appellant.

Geo. D. Sears, of Houston, for appellees.

LANE, J. On and for some time prior to the 30th day of November, 1925, appellee J. A. Shaw and appellant, C. R. Rowe, were partners in the conduct of a certain insurance business in the city of Houston. On said date J. A. Shaw sold his interest in said business to his partner, C. R. Rowe, and in consideration for such interest Shaw executed and delivered to Rowe an instrument showing the terms and conditions of the sale, the pertinent parts of which are as follows:

"Know All Men By These Presents: That I, J. A. Shaw, of the County of Harris and State of Texas aforesaid, for and in consideration of the sum of one Dollar ($1.00) cash in hand paid by C. R. Rowe, receipt of which is hereby acknowledged, and the assumption and agreement to pay on the part of said C. R. Rowe, of the accounts, notes and claims owing by the firm of Rowe & Shaw, a co-partnership composed of C. R. Rowe and J. A. Shaw, as listed

below: (Here follows a list of the accounts, notes and claims assumed by Rowe.)

"Have bargained, sold and delivered and by these presents do bargain, sell and deliver unto the said C. R. Rowe of the County of Harris and State of Texas, all of the interest I have in the insurance business and agency of Rowe & Shaw, together with my good will to the expirations and business on the books of· said business and including all office furniture and fixtures, supplies and equipment situated on the fifth floor of the West Building in the City of Houston, Texas, and all the books and records of saia business; the principal items of furniture and fixtures and equipment being listed as follows: (Here follows' a list of property conveyed by Shaw to Rowe.)

"And I do hereby bind myself, my heirs, executors, administrators, and assigns to forever warrant and defend the title to the said above described property, accounts, expirations, records and good will above set out to the extent of my undivided one-half interest therein unto the said C. R. Rowe, his heirs, executors, administrators and assigns, against every person whomsoever lawfully claiming or to claim the same or any part thereof.

"It is understood, however, that by the sale of my interest and good will in the business of Rowe & Shaw that I have the privilege of operating a general insurance business in the City of Houston, either alone as an individual or in connection with any other person, firm, partnership, or corporation.

"Witness my hand at Houston, Texas, on this the 30th day of November, A. D. 1925.
"[Signed]  J. A. Shaw."

On the 20th day of August, 1926, C. R. Rowe brought this suit against his former partner, Shaw, Sol Gollob, and Ben Cohen. He alleged that he had entered into a diligent performance of all obligations assumed by him under such contract and was faithfully continuing to perform them, but that J. A. Shaw had failed to perform his part of said contract; that he had breached the same, and that Sol Gollob and Ben Cohen had, with full knowledge of all existing circumstances, joined Shaw in violating said contract; that Shaw, Gollob, and Cohen had entered into a conspiracy to deprive him of all the benefits of the contract.

Specifying the acts of the several defendants for which he claims damages, the plaintiff alleged, substantially, that it was understood and agreed between himself and defendant Shaw, at the time of the execution of the instrument above mentioned, that if he (plaintiff) would assume the indebtedness of their partnership business, amounting to about $20,000, Shaw would by said instrument transfer to him said business, together with the good will of Shaw, and that Shaw ·had by the instrument obligated himself not to in any way interfere with him in conducting said insurance business and in renewing and rewriting insurance policies theretofore written by the partnership; that after the execution of the contract and after he had taken charge of the business and entered into the performance of the obligations assumed by him thereby, defendant Shaw, Gollob, and Cohen each separately and conjunctively did by solicitation undertake to prevent him from renewing insurance policies which had theretofore been written by the partnership of Rowe & Shaw; that they (the defendants) formed a partnership between themselves and engaged in the insurance business in competition with him in the city of Houston and sought to deprive him of all benefits contemplated by virtue of the contract between him and Shaw; that by reason of said wrongful acts he had suffered damages in the sum of $25,000.

Defendants J. A. Shaw and Sol Gollob answered by general denial, admitted that they had formed a partnership and were doing business under the firm name of Shaw-Gollob & Co., and under oath denied that Ben Cohen was a member of the partnership.

Ben Cohen answered by general denial, and under oath denied the existence of the partnership as alleged by the plaintiff.

A jury was selected and impaneled to try the cause, but after the court heard the testimony of plaintiff Rowe the case was withdrawn from the jury and judgment was rendered by the court, decreeing that the plaintiff take nothing by his suit as against any of the defendants.

In the judgment entered it is recited as follows:

"The court after hearing the pleadings read and the testimony of C. R. Rowe, and having in connection with the plaintiff's petition considered the contract which forms the basis of this suit and which was referred to in the petition. and virtually made a part thereof, and the court being of opinion that the contract declared upon is not susceptible of being construed legitimately, so as to form the basis of a cause of action as sought to be done by the plaintiff here, and the court finding that the contract is plain and unambiguous and does not by its terms prevent defendants from engaging in a similar business and doing a general insurance business in the City of Houston; and that the contract being plain, it cannot be modified, changed or enlarged in the absence of a pleading of fraud, accident, or mistake, but must be construed· by the court as it is written; and plaintiff's counsel not desiring to amend to allege fraud, accident, or mistake, and the court being of opinion that no cause of action can be stated in this respect without such pleading, declined to permit other amendment as requested by plaintiff, and plaintiff having declined to go forward with proof of any cause of action independent of the contract declared on, the court discharged the jury and entered judgment accordingly."

C. R. Rowe has appealed.

As indicated by the judgment, and shown by appellant's bill of exceptions, appellant was permitted to testify, and did testify, substantially, that he had for a number of years been engaged in business under the name of Rowe Insurance Agency and had built up

a fairly good business; that he took J. A. Shaw in as a partner; that at such time he was local agent for several fire insurance companies, local agent for Ætna Casualty & Surety Company and Ætna Life Insurance Company, and was soliciting automobile, fire, life, and bond insurance; that the various companies allowed a commission to their local agents of an average of 20 per cent. of the premiums collected; that the partnership business of Rowe & Shaw was first conducted from room 619 in the West Building in the city of Houston, and later from room 528 of such building; that he and Shaw dissolved partnership on November 30, 1925; that J. A. Shaw executed and delivered to him the instrument described in his petition, and which was handed to him with instructions to read the same to the jury, and which was read to the jury; that at the time of the dissolution of the firm of Rowe & Shaw they owed $20,000; that in the year prior to the dissolution of the firm they earned in the way of commissions the sum of $8,800 and their expenses ran about $300 per month; they paid $600 as interest and $125 to a party who extended a loan to the firm; besides the expenses mentioned, both Rowe and Shaw drew $300 per month from the business; that the total annual expenses were estimated at $5,752.80, and the total net profits at $3,047.40, a profit of $126.96 monthly to each partner; at the time of the dissolution of the firm, the bills and accounts receivable owned by them amounted to $5,292.85 and the office furniture was worth $500; that he (Rowe) had been in the insurance business for about 22 years; that he knew about the sale of insurance agencies in the city of Houston. At this point, counsel for the plaintiff Rowe asked him the following question:

"Do you know whether or not there does prevail, and did at the time you purchased this business, in the City of Houston a custom as to how to base the valuation of an insurance agency such as the one that you and Mr. Shaw were interested in? Just state whether or not there was prevalent, as then and is now and has been for a good many years prevalent, a customary basis of determining the value of such an insurance agency—yes or not. You can answer yes or no."

After the question last above set forth was propounded to plaintiff Rowe, counsel for defendants objected to the plaintiff's testifying to his knowledge of any custom applicable to sales of insurance agencies, or to any circumstance connected with the business for the purpose of showing the intention of the parties to the contract involved, because such testimony would tend to contradict and vary the terms of the specific terms of the written agreement between the parties, which is plain and unambiguous on its face and not subject to explanation, variance, or contradiction by

parol proof of extrinsic facts, circumstances, or customs in the absence of pleading alleging fraud, accident, or mistake in entering into it; that such contract being plain and unambiguous, it was the duty of the court to construe its legal effect.

The court sustained the objection urged, and informed counsel for the plaintiff that unless he desired to rely upon a tort action wholly independent of the contract, the court would dismiss the suit. Whereupon, counsel announced that it was not his purpose to rely upon such tort action, and that he did not desire to introduce proof of any cause of action arising independently of and not out of or by virtue of the contract declared upon.

Thereupon counsel for plaintiff requested the court to permit withdrawal of announcements of ready for trial so that demurrers and exceptions might be presented, as none had theretofore been presented, because plaintiff should have a right to amend if his pleadings were amendable, and the court then and there held, independent of an action based upon tort not connected with the rights of the parties under the contract, plaintiff's petition was not subject to amendment or enlargement so as to entitle him to recover for any character of breach of said contract as sought to be done by the plaintiff's original petition. Thereupon counsel for plaintiff requested the court to require counsel for defendants to present his general demurrer. The court overruled such request, and stated that, the contract upon which the cause of action was based having been made a part of the plaintiff's petition, no proof could be introduced thereunder which would entitle plaintiff to recover, as sought to be done by his pleadings, and that same could not be done by amendment or by enlarging the allegations of this petition, because in the opinion of the court, in the absence of an express provision in the contract, defendants would have the right to solicit renewals of premiums of insurance policies, or solicit any business or premiums mentioned in the contract, and that the warranty of renewals amounted to nothing, as the situation was analogous to following a swarm of bees; any person who could follow the same and locate it when it settled would be entitled to it.

Plaintiff also offered to testify that insurance agencies, such as the ones mentioned in plaintiff's petition, were salable, under a prevailing custom in Houston, at a price equal to the premiums collected for one year, and that a custom in the city of Houston prevailed that on a general average, policyholders would renew premiums three years in succession with the same agency. The court sustained an objection to this testimony because it was irrelevant and immaterial for the reasons stated hereinabove.

Plaintiff offered to testify, and to produce witnesses present in court who would also testify, that defendants and each of them had violated the terms of the contract by soliciting renewals of policies mentioned in the contract and pleadings, and which were claimed by plaintiff, and the plaintiff suffered damages thereby, and plaintiff in open court also offered to introduce evidence in support of each allegation of his petition; but the trial court declined to permit plaintiff to do so unless he desired to establish a cause of action independent of the contract declared upon. Plaintiff in open court announced that he did not desire to introduce proof of any cause of action arising independently of, and not out of or by virtue of, the contract declared upon.

To the action of the court above stated, the plaintiff excepted and presents such action of the court as constituting reversible error.

There is no statement of facts with the record, and we are therefore forced to gather from the pleadings of the parties, the judgment of the court, and the one bill of exception, information of the proceedings resulting in the judgment appealed from.

Fearing that we have not sufficiently stated the pertinent allegations of the plaintiff, we will here make this further statement:

It appears from the matters and things above stated that appellant Rowe, plaintiff in the trial court, pleaded the contract between himself and defendant Shaw; that he alleged it was understood between these two parties, at the time of the execution by Shaw and the acceptance by him of the contract, that Shaw was obligating himself by the instrument not to in any manner interfere with Rowe in conducting the insurance business transferred to him by the instrument, nor in the renewal and rewriting of policies which had been theretofore written by the firm of Rowe & Shaw; that after the execution and acceptance of the contract mentioned, Shaw formed a partnership with defendants Gollob and Cohen, who knew of the existence and terms of the above-mentioned contract and all the facts leading up to and inducing its execution and acceptance, for the purpose of conducting a general insurance business; that notwithstanding such knowledge, all of the defendants jointly and severally undertook to prevent him from successfully conducting his insurance business by soliciting and otherwise preventing him from procuring renewals of the policies theretofore written by the firm of Rowe & Shaw as they expired; that the term "good will" used in the contract between him and Shaw has been established by common knowledge, common practice, and general custom among insurance agents of the city of Houston to mean a protection against any and all interference on the part of one transfer-

ring "good will" with the transaction of the business transferred; that by said contract Shaw guaranteed to him (Rowe) that all policyholders would be left unmolested and free from any kind and character of solicitation or persuasion designed to deprive him of a right to renew any of such policies; that Shaw, Gollob & Cohen not only conspired to prevent him from procuring renewals of policies written by Rowe & Shaw, but maliciously conspired to prevent him from collecting any of the outstanding bills and accounts receivable transferred by Shaw to him, and to deprive him of all the assets accrued and secured by the bill of sale from Shaw to him; that the defendants, for the purpose of injuring him in his business, had been telling policyholders and parties whose policies were subject to renewal that plaintiff had assumed large outstanding liabilities, that he was practically in a bankrupt condition, and could not possibly continue in business for six months' time because of his indebtedness; that he could not extend credit to them as they (defendants) could do.

The majority of the court think that the trial judge erred in the respect claimed by appellant in his bill of exception.

Their conclusions, as thus expressed by them, are:

"(1) Appellant declared upon—and offered proof tending to substantiate—a good cause of action under the contract between the parties and was not remitted to an action sounding in tort independent thereof in that, by its express terms, the contract, among other rights, specifically vested him with the retiring partner's good will to the expirations and business on the books of said business, together with his quoted covenant of general warranty of title thereto, and the alleged conduct on the latter's part constituted a breach of the obligation inhering in as well as implied from that provision—that is, not only would he not interfere with his vendee in the enjoyment of his purchase, but would also forever defend his right to all of its privileges and immunities;

"(2) Under the bill of sale both the 'good will' of the established, going business in all of its reaches, as then reflected by the firm's books, and that to the expirations or renewals thereof passed, hence one of the rights plainly going to the purchaser was to be unmolested in continuing that business with the customers patronizing the partnership at the time of the sale.

"(3) The contract did not place the appellee under the duty of refraining from competition with the appellant as to any insurance business in the City of Houston other than that in particular that had already been pre-empted and booked by the partnership between them, but as to that so segregated and designated business, it did constitute a covenant against interference upon his part.

"The trial court's 'swarm of bees' illustration seems to us, therefore, to be happily apropos—as does also the concluding provision of this contract—to such other general insurance business in Houston, but to have no reference to what had thus before been so excepted from it.

"Under the accepted definitions of the term

'good will,' as applied to an established business and its contemplated continuance in the same way by one of the former partners, this right to continue so dealing with the old customers unmolested by the retiring member is quite generally recognized; Ranft v. Reimers, 200 Ill. 386, 65 N. E. 720, 60 L. R. A. 291, and cited authorities; Rice v. Angell, 73 Tex. 350, 11 S. W. 338, 3 L. R. A. 769; 26 Corpus Juris, page 729, par. 1.

"(4) Neither do we think any material distinction in the meaning of the good-will provision in this bill of sale by the use of the word 'expirations' rather than renewals can be made, as otherwise the entire clause would seem to us to have no significance at all; it being a policy-writing business, which in its nature called for periodical novations of the contracts of insurance, it seems plain that such continuations of the pre-existing business were what the parties mutually contemplated."

The writer cannot concur in the conclusions of the majority leading to a reversal of the judgment.

Appellant pleaded the contract, and bases his suit upon his allegations of a breach thereof. There is no allegation that such contract was obtained through misrepresentation, fraud, or mistake; but, to the contrary, the only inference to be drawn from the pleadings of the plaintiff and the evidence is that the plaintiff affirms the contract as valid and enforceable between the parties thereto. Such being the fact, it is clear that the plaintiff did not desire to withdraw his announcement of ready for trial to enable him to allege fraud or mistake in the execution and acceptance of the contract.

I agree with the holding of the trial court that the contract is plain and unambiguous, and that its terms could not be explained or varied by parol evidence, and that if the plaintiff had any cause of action against any of the defendants it arose out of a tort independent of the contract and not out of a breach of the same, and since the plaintiff announced in open court that it was not his purpose to rely upon a tort action independent of the contract and that he did not propose to introduce proof of any cause of action arising independently of and not out of or by virtue of the contract declared upon, I do not think the trial court abused its discretion in refusing to permit the plaintiff to withdraw his announcement of ready for trial at the time the request was made therefor. The evidence tendered, which was rejected upon objection of counsel for defendants, was offered to show that defendants had violated the terms of the plain, unambiguous written contract by showing that defendants had solicited the renewal of policies for persons who had theretofore been insured through the agency of the dissolved firm of Rowe & Shaw. The trial court held, and I think correctly so, that by the express terms of the contract appellee Shaw reserved the right "to operate a general insurance business in the City of Houston, either alone as an individual, or in connection with any other person, firm, partnership, or corporation." The words quoted are the exact language of the contract.

In view of the reservation clause quoted, can the contract, when read as an entirety, be reasonably construed to mean that Shaw had bound or intended to bind, not only himself to refrain from soliciting insurance from those who had formerly patronized the old firm of Rowe & Shaw whose policies had expired, but also bound and intended to bind any person, firm, partnership, or corporation with which he might associate himself in conducting a general insurance business in the City of Houston to so refrain? I think not.

Having reached the conclusion that the contract clearly reserves to Shaw the right to engage in a general insurance business in the City of Houston, individually or in connection with others, I further conclude that it reserved to him and such others the right to solicit insurance without hindrance from whomsoever they saw fit, and since it is made to appear that appellant declined to offer evidence in support of his allegation of wrongful acts, amounting to tort, on the part of any of the appellees, I do not think the court erred in withdrawing the case from the jury and rendering judgment for appellees.

Having reached the conclusions above expressed, I dissent from the action of the majority in reversing the judgment and remanding the cause.

Reversed and remanded.

LANE, J., dissenting.