Opinion filed August 31, 2022



In The

# Eleventh Court of Appeals

_____

## No. 11-20-00208-CV
_____

## SAMUEL ADAMS FLORES, Appellant

## V.

## OIL-TECH CONSTRUCTION, LLC, Appellee

**On Appeal from the 161st District Court**
**Ector County, Texas**
**Trial Court Cause No. B-17-05-0558-CV**

## M E M O R A N D U M   O P I N I O N

Samuel Adams Flores filed suit against his former employer, Oil-Tech Construction, LLC, for personal injuries he suffered at work. In his petition, Flores asserted that Oil-Tech was liable to him under theories of general negligence, negligence per se, gross negligence, and malice for injuries he suffered while on the job. Oil-Tech filed a combined traditional and no-evidence motion for summary judgment. The trial court granted Oil-Tech's motion for summary judgment. In one

issue, Flores appeals the trial court's ruling. We affirm in part, and we reverse and remand in part.

*Background Facts*

In September 2015, Flores was an employee of Oil-Tech. At the time, Flores had been an employee of Oil-Tech for over two years. Every morning, before driving a company vehicle out to his work site for the day, Flores would inspect that vehicle. If the inspection revealed that the vehicle required maintenance, Oil-Tech employees were required to make a verbal request for maintenance. During his tenure with Oil-Tech, Flores would primarily drive a three-quarter-ton or one-ton flatbed pickup. Typically, Oil-Tech employees were assigned the same vehicle every day. However, during the course of his employment with Oil-Tech, Flores operated four different vehicles—each of which were of similar size. The final vehicle that Flores operated during his tenure with Oil-Tech was a Dodge 3500.

On September 27, 2015, the day of his injury, Flores inspected the Dodge 3500 and reported no issues with the vehicle. Flores drove the pickup to the jobsite without any issue. Once at the jobsite, Flores unloaded all the necessary tools without incident. However, as Flores was stepping down from the bed of the pickup after reloading the tools for the day, he injured his knee.

In his deposition testimony, Flores testified that he asked Ahron Venegas and Lupe Cortez to add a step near the cab or the bed of the pickup. However, in Venegas's deposition, he recalled Flores only asking for a bolted-on step to the cab of the pickup and not the bed of the pickup. Flores further testified he had a large ladder as part of his equipment to perform his job. However, in a request for admission, Oil-Tech stated that it did not give Flores a ladder. From his knee injury, Flores suffered a broken kneecap, torn tendons, and torn ligaments.

*Analysis*

In a single issue, Flores contends that it was error for the trial court to grant Oil-Tech's motion for summary judgment. Because Oil-Tech is a nonsubscriber to workers' compensation, Flores must establish negligence by Oil-Tech in order to recover. *See Werner v. Colwell*, 909 S.W.2d 866, 868 (Tex. 1995) (citing *Sears, Roebuck & Co. v. Robinson*, 280 S.W.2d 238, 239 (Tex. 1955)). Oil-Tech sought a traditional summary judgment on the basis that it did not owe a duty to Flores for the claims that he asserted. Oil-Tech also asserted that Flores had no evidence that it owed a legal to duty to Flores or that it breached a legal duty to Flores.

The facts in this case are simple—Flores asserts that he suffered injuries to his knee while getting down from the flatbed of his work pickup. He asserted the following claims against Oil-Tech: The pickup was too high,[1] and Oil-Tech was negligent by failing to provide the proper instrumentalities and a safe work vehicle; Oil-Tech failed to exercise ordinary care to protect Flores; Oil-Tech was negligent in its supervision of Flores; and Oil-Tech was negligent in failing to warn Flores of the dangers of getting down from the flatbed. As set forth below, our analysis of these claims is not simple. *See Austin v. Kroger Tex., L.P.*, 465 S.W.3d 193, 201 (Tex. 2015) *(Austin I)* ("[D]ecisions regarding common law duties involve 'complex considerations of public policy including social, economic, and political questions and their application to the facts at hand.'" (quoting *Nabors Drilling, U.S.A., Inc. v. Escoto*, 288 S.W.3d 401, 410 (Tex. 2009))).

We review the trial court's grant of summary judgment de novo. *Lujan v. Navistar, Inc.*, 555 S.W.3d 79, 84 (Tex. 2018) (citing *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 215 (Tex. 2003)). When the trial court's order does

---

[1]At the hearing on the motion for summary judgment, Oil-Tech's attorney indicated that the distance between the ground and the top of the flatbed of Flores's work pickup was thirty-eight and one-half inches.

not specify the grounds for its summary judgment, we will affirm the summary judgment if any of the theories are meritorious. *Knott*, 128 S.W.3d at 216. Usually, when a party moves for both a traditional and no-evidence summary judgment, we first review the no-evidence summary judgment. *See Lightning Oil Co. v. Anadarko E&P Onshore, LLC*, 520 S.W.3d 39, 45 (Tex. 2017). "However, this rule is not absolute." *Neurodiagnostic Tex, L.L.C. v. Pierce*, 506 S.W.3d 153, 163 (Tex. App.—Tyler 2016, no pet.).

After an adequate time for discovery, a party may move for summary judgment on the ground that there is no evidence of one or more essential elements of a claim or defense on which an adverse party would have the burden of proof at trial. TEX. R. CIV. P. 166a(i). We review a no-evidence motion for summary judgment under the same legal sufficiency standard as a directed verdict. *Merriman v. XTO Energy, Inc.*, 407 S.W.3d 244, 248 (Tex. 2013). Under this standard, the nonmovant has the burden to produce more than a scintilla of evidence to support each challenged element of its claims. *Id.* Evidence is no more than a scintilla if it is "so weak as to do no more than create a mere surmise or suspicion" of a fact. *King Ranch, Inc. v. Chapman*, 118 S.W.3d 742, 751 (Tex. 2003) (quoting *Kindred v. Con/Chem, Inc.*, 650 S.W.2d 61, 63 (Tex. 1983)).

A party moving for traditional summary judgment bears the burden of proving that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. TEX. R. CIV. P. 166a(c); *Nassar v. Liberty Mut. Fire Ins. Co.*, 508 S.W.3d 254, 257 (Tex. 2017). To be entitled to a traditional summary judgment, a defendant must conclusively negate at least one essential element of the cause of action being asserted or conclusively establish each element of an affirmative defense. *Sci. Spectrum, Inc. v. Martinez*, 941 S.W.2d 910, 911 (Tex. 1997). "Evidence is conclusive only if reasonable people could not differ in their

conclusions." *City of Keller v. Wilson*, 168 S.W.3d 802, 816 (Tex. 2005). If the movant initially establishes a right to summary judgment on the issues expressly presented in the motion, then the burden shifts to the nonmovant to present to the trial court any issues or evidence that would preclude summary judgment. *See City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 678–79 (Tex. 1979). In reviewing both traditional and no-evidence summary judgments, we consider the evidence in the light most favorable to the nonmovant, indulging every reasonable inference in favor of the nonmovant and resolving any doubts against the movant. *Merriman*, 407 S.W.3d at 248; *City of Keller*, 168 S.W.3d at 824.

*Duty to Warn*

We first address Flores's contention that Oil-Tech had a duty to warn him of the dangers associated with getting down from the bed of his work pickup. Generally, "[t]he elements of a common-law negligence claim are (1) a legal duty; (2) a breach of that duty; and (3) damages proximately resulting from the breach." *Elephant Ins. Co. v. Kenyon*, 644 S.W.3d 137, 144 (Tex. 2022) (citing *Praesel v. Johnson*, 967 S.W.2d 391, 394 (Tex. 1998)). The first question in a negligence case that must be answered is whether a duty exists. *Id.* (citing *Greater Hous. Transp. Co. v. Phillips*, 801 S.W.2d 523, 525 (Tex. 1990)).

As noted by the Texas Supreme Court, "an employer is not an insurer of its employees' safety." *Kroger Co. v. Elwood*, 197 S.W.3d 793, 794 (Tex. 2006) (citing *Leitch v. Hornsby*, 935 S.W.2d 114, 117 (Tex. 1996); *Exxon Corp. v. Tidwell*, 867 S.W.2d 19, 21 (Tex. 1993)). "It owes no duty to warn of hazards that are commonly known or already appreciated by the employee." *Id.* at 794–95 (citing *Nat'l Convenience Stores, Inc. v. Matherne*, 987 S.W.2d 145, 149 (Tex. App.—Houston [14th Dist.] 1999, no pet.)). "And, when an employee's injury results from performing the same character of work that employees in that position have always

5

done, an employer is not liable if there is no evidence that the work is unusually precarious." *Id.* at 795 (citing *Werner v. Colwell*, 909 S.W.2d 866, 869 (Tex. 1995)).

The plaintiff in *Elwood* was a grocery store courtesy clerk. *Id.* at 794. He was injured when a customer shut her vehicle door on his hand while he was transferring groceries from a grocery cart into the car. *Id.* The Texas Supreme Court held that the employer "had no duty to warn [the plaintiff] of a danger known to all." *Id.* at 795.

The court revisited *Elwood* in *Jack in the Box, Inc. v. Skiles*. 221 S.W.3d 566 (Tex. 2007). The plaintiff in *Skiles* was a delivery truck driver. *Id.* at 567. While making a delivery, the automatic lift gate on his delivery truck malfunctioned. *Id.* The plaintiff obtained a ladder and used it to climb over the liftgate and jump into the back of his delivery trailer. *Id.* Upon landing, he suffered a knee injury. *Id.* The court held that the employer had no duty to warn the plaintiff of an obviously dangerous condition. *Id.* at 567. In reaching its holding, the supreme court relied on the fact that moving food products was a regular aspect of the plaintiff's job and that he voluntarily decided to use the ladder to unload the food products. *Id.* at 569. The court further noted that "[t]he dangers associated with the use of a ladder to climb over a lift gate are common and obvious to anyone." *Id.*

*Brookshire Grocery Co. v. Goss* involved a grocery store employee injured while attempting to maneuver around a loaded "lowboy" loading cart. 262 S.W.3d 793, 794 (Tex. 2008). The plaintiff alleged that the employer failed to warn her of the risks of maneuvering around loading carts. *Id.* Citing *Elwood* and *Skiles*, the Texas Supreme Court held that the employer owed no duty to warn because the risk of maneuvering around a loading cart was commonly known and appreciated. *Id.* at 794–95. The court noted that the danger posed by the loading cart was apparent to anyone and that the plaintiff had encountered it in the past. *Id.* at 795.

6

As the movant for a traditional summary judgment, Oil-Tech bore the burden of producing evidence that conclusively negated one of the essential elements of Flores's claims. *Nassar*, 508 S.W.3d at 257. In order to negate that it had a duty to warn Flores, Oil-Tech had to produce evidence that conclusively established that the risk of getting down from the flatbed of the work pickup was commonly known or already appreciated by Flores. *See Elwood*, 197 S.W.3d at 794–95. Oil-Tech included as summary judgment evidence excerpts from Flores's deposition testimony. In his deposition, Flores testified as follows: that he was both personally and professionally familiar with operating vehicles that were similar to the one on which his injury occurred; that he drove a similarly sized pickup every day while at work; that he would help unload supplies from the bed of his work pickup every day at work; and that he had driven the same work pickup for at least forty-five days before his injury. This summary judgment evidence conclusively establishes that Flores was aware of the risks posed to him by getting down from the flatbed of his work pickup.

Like the plaintiffs in *Elwood*, *Skiles*, and *Goss*, Flores's injury occurred while he was performing a task that was a regular aspect of his job. In his deposition testimony, Flores testified that he loaded and unloaded tools from the bed of the pickup multiple times a day. Flores further testified that he had driven the same work pickup for over a month before his injury occurred. The summary judgment evidence established that the condition of the bed of the work pickup was an open and obvious condition and that Flores was aware of its condition. Accordingly, Oil-Tech had no duty to warn Flores of any dangers posed by getting down from the bed of his work pickup. The trial court did not err by granting Oil-Tech's motion for traditional summary judgment that it had no duty to warn Flores.

7

*Necessary-Use Exception*

Flores also contends that Oil-Tech had a duty to warn under the necessary-use exception. The Texas Supreme Court addressed the necessary-use exception in *Austin I* when it addressed an employer's duty to an injured employee who asserts a premises liability claim. 465 S.W.3d at 203–04, 206. An employer has no duty to warn or take safety measures beyond those that an ordinary, reasonable landowner would take. *Id.* at 204. Thus, an employer has a duty to make safe or warn against any concealed, unreasonably dangerous conditions of which it is aware, or reasonably should be aware, but the employee is not. *Id.* at 203 (citing *Goss*, 262 S.W.3d at 794).

Under the necessary-use exception, an employer has a duty to make its premises safe when, despite an employee's awareness of the risks, it is necessary that the employee use the dangerous premises and the employer should have anticipated that the employee is unable to take measures to avoid the risk. *Id.* at 208. However, the necessary-use exception does not apply, and the employer has "no duty to protect or warn [employees,] when they are aware of the risks and could have avoided them." *Id.*

Flores asserted that he "fell back" while getting down from his work pickup because he took too long of a stride while holding onto a toolbox. In its motion for traditional summary judgment, Oil-Tech provided deposition testimony from Flores wherein he testified that he had a large ladder available for his use. This summary judgment evidence establishes that it was not necessary for Flores to step off the bed of the pickup in the manner that he did. Thus, the necessary-use exception is inapplicable because Flores could have avoided the risk presented by the manner in which he got down from his work pickup. The trial court did not err by granting Oil-Tech's motion for traditional summary judgment that it had no additional duty to warn Flores under the necessary-use exception.

8

*Duty to Train*

Flores next contends that Oil-Tech had a duty to train him on how to properly get down from the bed of his work pickup. In most circumstances, employers have a duty to train their employees. *Molina v. Home Depot USA, Inc.*, 20 F.4th 166, 170 (5th Cir. 2021) (citing *Elwood*, 197 S.W.3d at 794–95) (applying Texas law). However, there is no duty to train employees when the danger is commonly known. *Id.* (citing *Austin I*, 465 S.W.3d at 210). As noted in *Austin I*, an "employer owes no duty to warn or train employees with respect to dangers that are commonly known or already appreciated by the employee." 465 S.W.3d at 210 (citing *Escoto*, 288 S.W.3d at 413; *Goss*, 262 S.W.3d at 794–95; *Skiles*, 221 S.W.3d at 568; *Elwood*, 197 S.W.3d at 794–95).

In order to succeed on this point on traditional summary judgment grounds, Oil-Tech had to provide conclusive evidence that the danger of getting down from the bed of a pickup is common knowledge or was already appreciated by Flores. *See id.* Oil-Tech provided the following excerpt from Flores's deposition testimony as summary judgment evidence:

> Q. . . . And so the pusher position, excuse me, you were working underneath a pusher for a year, right?
>
> A. Yes.
>
> Q. Okay. So you saw for a year everything the pusher did, right?
>
> A. Correct.
>
> Q. And tell me if I'm wrong. It seems like a pusher does what, you know, the two gentlemen that help him, his coworkers, do in addition to kind of supervising them, right?
>
> A. Yes, ma'am. You work alongside with them, but you actually are the person that actually gets the orders, you know, what to do.
>
> Q. Okay. So your job tasks were the same as before in addition to supervision, right?

A. Correct.

Q. So you were still . . . had the knowledge of how to get in and get out, load and unload, and all of that, right?

A. Yes, ma'am.

Q. You didn't necessarily need any special training to be a pusher?

A. No, ma'am.

. . . .

Q. . . . [S]o you knew how to get into and out of [the vehicle] without the training without injury, correct?

A. Yes, ma'am.

. . . .

Q. Okay. So you actually did not need additional training on how to enter and exit the front or the back of the vehicle, because you already knew how to do it, right?

A. Correct.

This evidence conclusively establishes that Flores was aware of how to get down from the bed of his work pickup and any danger associated therewith. The trial court did not err by granting Oil-Tech's motion for traditional summary judgment that it had no duty to train Flores.

*Necessary-Instrumentalities Claim*

Oil-Tech asserted that it had no duty to provide equipment that was unnecessary to the safe performance of Flores's job. Oil-Tech also asserted that Flores had no evidence that Oil-Tech breached a legal duty to Flores. As addressed below, Oil-Tech contends that there is no evidence that Flores needed any additional equipment in order to safely get down from the bed of his work pickup.

Generally, employers have a duty to provide their employees with a safe workplace. *Elwood*, 197 S.W.3d at 794 (citing *Farley v. M M Cattle Co.*, 529

10

S.W.2d 751, 754 (Tex. 1975)). This duty includes providing employees with needed safety equipment. *Id.* However, an employer's duty to provide its employees with equipment is limited to providing only the equipment that is necessary to perform the job safely. *Id.* at 795 (citing *Allsup's Convenience Stores, Inc. v. Warren*, 934 S.W.2d 433, 438 (Tex. App.—Amarillo 1996, writ denied)).

The Texas Supreme Court briefly addressed an instrumentalities claim in *Austin I*. 465 S.W.3d at 214–16. *Austin I* involved a question certified to the Texas Supreme Court by the Fifth Circuit asking for the resolution of a question pertaining to a non-subscribing employer's liability to an employee for an alleged premises defect. *Id.* at 199. In addition to asserting a premises liability claim, the employee in *Austin I* also asserted an instrumentalities claim. *Id.* at 214. The Texas Supreme Court declined to address the merits of the employee's instrumentalities claim, but it noted that an employer had a duty to provide necessary equipment, training, or supervision, including a duty to furnish reasonably safe equipment for the performance of the job. *Id.* at 215.

Afterwards, the Fifth Circuit addressed the merits of the employee's instrumentalities claim. *Austin v. Kroger Tex. L.P.*, 864 F.3d 326, 329–34 (5th Cir. 2017) (per curiam) (*Austin II*). The court cited *Elwood* for the applicable duty to provide equipment necessary for the safe performance of an employee's job. *Id.* at 329 (citing *Elwood*, 197 S.W.3d at 794). This duty to furnish reasonably safe instrumentalities is "non-delegable and continuous," and it exists "when the employee is performing his customary job duties." *Id.* at 332. Stated another way, "nonsubscribing employers owe their employees a duty to provide necessary instrumentalities to safely perform their customary work." *Id.* at 334.

The court in *Austin II* examined the factors identified by the Amarillo Court of Appeals in *Warren* to determine whether an instrumentality was necessary for the safe performance of an employee's job: (1) whether the employee had ever

requested the instrumentality in question; (2) whether the employee had complained that the task he was performing was unsafe; (3) whether the employee had safely performed the task in the past without injury; (4) whether there was evidence that the instrumentality "was commonly used in, or had been established by industry standards or customs as a safety measure for," his job; (5) whether "a reasonably prudent employer would have provided such instrumentality"; and (6) whether there was medical evidence that the instrumentality would have prevented the employee's injury. *Id.* at 329 (quoting *Warren*, 934 S.W.2d at 438).

The employee in *Warren* was injured while unloading a delivery truck at a convenience store. 934 S.W.2d at 434. She alleged that her employer should have provided her with a back brace or a belt for lifting.[2] *Id.* at 437–38. The Amarillo Court of Appeals determined that there was no evidence that a back brace or a belt for lifting was necessary because there was no evidence of any of the factors that it identified. *Id.* at 438.

The instrumentality at issue in *Austin II* was a product known as "Spill Magic." 864 F.3d at 327. The employer's safety handbook recommended that it be used when cleaning up a spill, and its utility cart was usually stocked with it. *Id*. The employee in *Austin II* was injured while cleaning up a spill at a time when Spill Magic was not available for the employee's use. *Id.* at 327–28. The Fifth Circuit concluded that a material fact issue existed because, under the fourth and fifth *Warren* factors, there was a fact question as to whether the instrumentality in question was necessary for the safe performance of the job. 864 F.3d at 330–31.

Flores contends that he provided more than a scintilla of evidence that a welded-on step to the bed of the pickup or a stepladder was necessary for the safe

---

[2]The employee in *Warren* also alleged that the employer should have provided a loading dock. 934 S.W.2d at 438. The court determined that the loading dock allegation was not supported by evidence, in part because it was undisputed that a loading dock was not feasible at the store location where the employee was injured. *Id.* at 438.

performance of his job. Additionally, he contends that the evidence created a fact issue about whether the absence of a welded-on step on the bed of the pickup created an unusually precarious situation. Conversely, Oil-Tech contends that the bed of Flores's work pickup did not pose an unusually precarious situation and that a step was not necessary for him to safely perform his work.

Oil-Tech contends that the facts in this case are synonymous with the facts in *Hendrick Medical Center v. Smith*. No. 11-06-00145-CV, 2007 WL 3309120 (Tex. App.—Eastland Nov. 8, 2007, pet. denied). The employee in *Smith* alleged that she was shocked while plugging in a refrigerator. *Id.* at *1. The evidence established that the employee was shocked because she was touching the prongs of the plug while plugging it into the electrical outlet. *Id.* at *11–12. We concluded that the employer had no duty to provide the employee with additional equipment because none was needed in order for the employee to not touch the prongs on the plug when plugging it into an outlet. *Id.* at *12.

We disagree that the holding in *Smith* is applicable to the facts here. After the issuance of our opinion in *Smith*, the court in *Austin II* seemed to suggest that an examination of the *Warren* factors is necessary for determining whether an instrumentality is necessary for a job's safe performance. 864 F.3d at 330 (citing *Warren*, 934 S.W.2d at 438). We did not address the *Warren* factors in *Smith*. Moreover, it would not appear that any of the *Warren* factors were present in *Smith*.

Applying the *Warren* factors to the facts in this case, there is evidence that Flores asked for a step to be added to his work pickup and there is evidence that other work pickups that he used at Oil-Tech had a step.[3] However, he had gotten down from the bed of this work pickup without incident for at least a month, and there is no evidence that he necessarily reported to Oil-Tech that his work was unsafe

---

[3]There was no evidence that the employee in *Smith* had requested the employer to provide her with the equipment that she asserted at trial was necessary for the safe performance of her job.

without a step. Furthermore, there is no evidence of an industry standard for when a step should be provided for the bed of a work pickup relative to its height from the ground.

Unlike in *Warren*, there is evidence of a least one of the factors that the Amarillo Court of Appeals recognized—that Flores had requested the equipment upon which his instrumentalities claim is based. Because there is evidence that he had requested a step on his work pickup and that other work pickups that he had used at Oil-Tech had a step on them, there is a fact question as to whether a step was necessary for the safe performance of Flores's customary duties. Because of this fact question, the trial court erred in granting summary judgment on Flores's instrumentality claim.

*Negligence Per Se*

Negligence per se is a common-law concept in which a duty is based on a standard of conduct created by a statute or regulation rather than on the reasonably prudent person test used in pure negligence claims. *See Smith v. Merritt*, 940 S.W.2d 602, 607 (Tex. 1997). As explained in *Supreme Beef Packers, Inc. v. Maddox*:

> Negligence per se is a concept whereby a legislatively imposed standard of conduct is adopted by the civil courts as defining the conduct of a reasonably prudent person. In such a case, the jury is not asked to decide whether or not the defendant acted as a reasonably prudent person would have acted under the same or similar circumstances. The statute itself states what a reasonably prudent person would have done. If an excuse is not raised, the only inquiry for the jury is whether or not the defendant violated the statute or regulation and, if so, whether the violation was a proximate cause of the injury.

67 S.W.3d 453, 455–56 (Tex. App.—Texarkana 2002, pet. denied) (citations omitted).

Flores pleaded four Occupational Safety and Health Administration (OSHA) regulations upon which he based his negligence per se claim—29 C.F.R. §§ 1903.1,

1910.24,[4] 1910.178(q)(1), 1926.601. "[I]t is well-established that regulations promulgated under the OSHA statute neither create an implied cause of action nor establish negligence per se." *Gonzalez v. VATR Constr. LLC*, 418 S.W.3d 777, 789 (Tex. App.—Dallas 2013, no pet.) (citing *McClure v. Denham*, 162 S.W.3d 346, 353 (Tex. App.—Fort Worth 2005, no pet.)). As noted in *McClure*, the federal statute under which OSHA regulations are promulgated provides as follows:

> Nothing in this chapter shall be construed . . . to enlarge or diminish or affect in any other manner the common law or statutory rights, duties, or liabilities of employers and employees under any law with respect to injuries, diseases, or death of employees arising out of, or in the course of employment.

162 S.W.3d at 353 (quoting 29 U.S.C.A. § 653(b)(4) (West 1999)). Thus, "Texas courts have held that the common law duties imposed by state law are not expanded by OSHA regulations." *McClure*, 162 S.W.3d at 353 (citing *Richard v. Cornerstone Constructors, Inc.*, 921 S.W.2d 465, 468 (Tex. App.—Houston [1st Dist.] 1996, writ denied) (op. on reh'g)).

The four OSHA regulations upon which Flores relies provide as follows:

29 C.F.R. § 1903.1 **Purpose and Scope.**

> The Williams–Steiger Occupational Safety and Health Act of 1970 (84 Stat. 1590 et seq., 29 U.S.C. 651 et seq.) requires, in part, that every employer covered under the Act furnish to his employees employment and a place of employment which are free from recognized hazards that are causing or are likely to cause death or serious physical harm to his employees. The Act also requires that employers comply with occupational safety and health standards promulgated under the Act . . . .

Former 29 C.F.R. § 1910.24 **Fixed industrial stairs.**

> (a) Application of requirements. This section contains specifications for the safe design and construction of fixed general industrial stairs. This classification includes interior and exterior stairs

---

[4]Flores is relying on a previous version of 29 C.F.R. § 1910.24 pertaining to fixed industrial stairs.

around machinery, tanks, and other equipment, and stairs leading to or from floors, platforms, or pits. . . .

(b) Where fixed stairs are required. Fixed stairs shall be provided for access from one structure level to another where operations necessitate regular travel between levels, and for access to operating platforms at any equipment which requires attention routinely during operations. Fixed stairs shall also be provided where access to elevations is daily or at each shift for such purposes as gauging, inspection, regular maintenance, etc., where such work may expose employees to acids, caustics, gases, or other harmful substances, or for which purposes the carrying of tools or equipment by hand is normally required. . . .

## 29 C.F.R. § 1910.178 **Powered industrial trucks.**

(q) Maintenance of industrial trucks. (1) Any power-operated industrial truck not in safe operating condition shall be removed from service. All repairs shall be made by authorized personnel.

## 29 C.F.R. § 1926.601 **Motor Vehicles.**

(a) Coverage. Motor vehicles as covered by this part are those vehicles that operate within an off-highway jobsite, not open to public traffic. . . .

(b) General requirements. . . . (14) All vehicles in use shall be checked at the beginning of each shift to assure that the following parts, equipment, and accessories are in safe operating condition and free of apparent damage that could cause failure while in use: service brakes, including trailer brake connections; parking system (hand brake); emergency stopping system (brakes); tires; horn; steering mechanism; coupling devices; seat belts; operating controls; and safety devices. All defects shall be corrected before the vehicle is placed in service. These requirements also apply to equipment such as lights, reflectors, windshield wipers, defrosters, fire extinguishers, etc., where such equipment is necessary.

C.F.R. §§ 1903.1, 1910.24 (a)–(b) (pre January 17, 2017 version of this regulation), 1910.178, 1926.601 (emphasis in original).

A regulation cannot serve as the basis for negligence per se when the regulation does not provide "a specific standard of conduct different from the common-law standard of ordinary care." *Maddox*, 67 S.W.3d at 456. The OSHA regulations upon which Flores relies do not define a mandatory standard of conduct with respect to furnishing a step for ingress and egress from the bed of his work pickup.[5] These regulations essentially require the employer to exercise safety—a standard that requires the exercise of judgment that is the same as the ordinarily prudent person standard. *See id*; *see also Elwood*, 197 S.W.3d at 794 (noting that employers have a duty "to use ordinary care in providing a safe workplace"). "Where a statute incorporates the ordinarily prudent person standard, negligence per se does not apply because the statute does not establish a specific standard of conduct different from the common-law standard of ordinary care." *Maddox*, 67 S.W.3d at 456. Accordingly, the trial court did not err in granting summary judgment with respect to Flores's claim for negligence per se.

*Gross Negligence Claim*

In his final contention, Flores asserts that the trial court erred in granting Oil-Tech's motion for summary judgment on his gross negligence claim. Gross negligence is statutorily defined as an act or omission:

> (A) which when viewed objectively from the standpoint of the actor at the time of its occurrence involves an extreme degree of risk, considering the probability and magnitude of the potential harm to others; and

---

[5]We note that OSHA issued a "standard interpretation" of 29 C.F.R. § 1910.24 wherein it indicated that, at least as far as the trailers on semi-trailer trucks are concerned, there are no OSHA requirements that "require any specific safety equipment or access means" with respect to stairs or railings on trailers. OSHA Std Interp 1910.24 (D.O.L.), 2015 WL 5781030, February 13, 2015; *see* https://www.osha.gov/laws-regs/standardinterpretations/2015-02-13 (last accessed on August 25, 2022).

(B) of which the actor has actual, subjective awareness of the risk involved, but nevertheless proceeds with conscious indifference to the rights, safety, or welfare of others.

TEX. CIV. PRAC. & REM. CODE ANN. § 41.001(11) (West Supp. 2021); *see Boerjan v. Rodriguez*, 436 S.W.3d 307, 311 (Tex. 2014) (per curiam). Unlike ordinary negligence, gross negligence contains "both an objective and a subjective component." *Reeder v. Wood Cnty. Energy, LLC*, 395 S.W.3d 789, 796 (Tex. 2012) (citing *Transp. Ins. Co. v. Moriel*, 879 S.W.2d 10, 21–22 (Tex.1994)). Under the objective component of gross negligence, "'extreme risk' is not a remote possibility of injury or even a high probability of minor harm, but rather the likelihood of serious injury to the plaintiff." *Mobil Oil Corp. v. Ellender*, 968 S.W.2d 917, 921 (Tex. 1998). Under the subjective component, "actual awareness means that the defendant knew about the peril, but its acts or omissions demonstrated that it did not care." *Id.*

Even though ordinary negligence is a prerequisite to establish gross negligence, evidence of ordinary negligence is not sufficient to prove gross negligence. *See U–Haul Int'l, Inc. v. Waldrip*, 380 S.W.3d 118, 140 (Tex. 2012). Conduct that is "merely thoughtless, careless, or not inordinately risky" is not grossly negligent. *Ardoin v. Anheuser–Busch, Inc.*, 267 S.W.3d 498, 503 (Tex. App.—Houston [14th Dist.] 2008, no pet.) (quoting *Moriel*, 879 S.W.2d at 22). The integral difference between ordinary negligence and gross negligence is the subjective component of the defendant's state of mind. *La.-Pac. Corp. v. Andrade*, 19 S.W.3d 245, 246–47 (Tex. 1999). "[A] party cannot be liable for gross negligence when it actually and subjectively believes that circumstances pose no risk to the injured party, even if they are wrong." *Waldrip*, 380 S.W.3d at 141 (citing *Andrade*, 19 S.W.3d at 248).

We must examine all of the events and circumstances from the defendant's perspective at the time the events occurred, without taking hindsight into consideration. *Reeder*, 395 S.W.3d at 796; *Ellender*, 968 S.W.2d at 922. In analyzing gross negligence claims, we must take the employee's experience into consideration. *Escoto*, 288 S.W.3d at 412. Additionally, under Texas law, "extreme risk" in the gross negligence context "is a function of both the magnitude and probability of the potential injury." *Graham v. Adesa Tex., Inc.*, 145 S.W.3d 769, 772 (Tex. App.—Dallas 2004, pet. denied). "To assess the degree of risk, the evidence is viewed objectively from the actor's standpoint." *Id.* at 773.

Flores contends that he produced more than a scintilla of evidence "that [Oil-Tech] authorized or ratified its employee's or agent's gross negligence or was grossly negligent in hiring [Venegas] who failed to timely weld the step which [Flores] requested onto the bed of its truck." Flores relies on the following evidence to support this contention: (1) Flores's deposition testimony that all of the previous trucks that Flores drove had a step on them either near the bed or the cab of the truck; (2) Venegas's deposition testimony that a step could either be bolted or welded onto a truck; and (3) additional deposition testimony from Venegas that some of Oil-Tech's trucks have steps on the back of them and that it is relatively inexpensive to attach steps to the trucks that do not have them.

A review of the record reveals that Flores failed to provide a scintilla of evidence that the failure to attach a step to Flores's work truck objectively involved an extreme risk of harm to Flores. Flores hurt his knee getting down from the bed of his work truck—a task that he as an experienced employee performed on a daily basis without incident until he was injured. *See Escoto*, 288 S.W.3d at 412. Because of the nature of the manner in which he was injured, there was not a likelihood of serious injury to Flores. *See Ellender*, 968 S.W.2d at 921. Viewed objectively, the alleged equipment deficit, coupled with the lack of magnitude and probability of the

injury, did not pose an extreme degree of risk. Accordingly, the trial court did not err by granting Oil-Tech's no-evidence motion for summary judgment on Flores's claim for gross negligence.

*This Court's Ruling*

We affirm the judgment of the trial court with respect to Flores's claims based on a duty to warn, a duty to train, negligence per se, and gross negligence. However, we reverse the judgment of the trial court with respect to Flores's negligence claim for failure to provide a necessary instrumentality, and we remand that claim to the trial court for further proceedings.

JOHN M. BAILEY
CHIEF JUSTICE

August 31, 2022

Panel consists of: Bailey, C.J.,
Trotter, J., and Wright, S.C.J.[6]

Williams, J., not participating.

---

[6]Jim R. Wright, Senior Chief Justice (Retired), Court of Appeals, 11th District of Texas at Eastland, sitting by assignment.